YOOST v CASPARI

Docket No. 294299. Submitted February 1, 2011, at Grand Rapids.
    Decided January 17, 2012, at 9:00 a.m. Leave to appeal denied, 491
    Mich 944.
    Wally Yoost brought an action in the Berrien Circuit Court against
    Patricia E. Caspari and subsequently amended his complaint to
    add Lawrence I. Frankle and Irwin C. Zalcberg. Yoost claimed that
    Caspari had attempted to extort from Yoost half the value of a
    residence he allegedly owned and that Frankle and Zalcberg had
    encouraged her actions. He also sought damages for the inten-
    tional infliction of emotional distress. Ellen Frankle, as personal
    representative of the estate of Lawrence Frankle, was substituted
    as a defendant. Zalcberg filed a counterclaim against Yoost and
    Hank Asher, claiming that they had conspired to commit the tort
    of abuse of process. Asher, a resident of Florida, moved for
    summary disposition pursuant to MCR 2.116(C)(1), arguing that
    the court lacked jurisdiction over him. The court, John E. DeWane,
    J., denied the motion without prejudice, concluding that Michigan
    had limited personal jurisdiction over Asher under MCL
    600.705(2). Asher appealed by leave granted.
        The Court of Appeals *held*:
        1. A court must have personal jurisdiction over a party before
    it may require the party to comply with its orders. While the
    plaintiff bears the burden of establishing jurisdiction over the
    defendant, he or she need only make a prima facie showing of
    jurisdiction to defeat a motion for summary disposition. If the
    parties present conflicting affidavits, all factual disputes are
    resolved in the plaintiff's favor and the plaintiff's prima facie
    showing is sufficient notwithstanding the contrary presentation
    by the moving party. To determine whether a Michigan court may
    exercise limited personal jurisdiction over a defendant, the court
    must determine (1) whether jurisdiction is authorized by Michi-
    gan's long-arm statute, and (2) whether the exercise of jurisdiction
    is consistent with the requirements of the Due Process Clause of
    the Fourteenth Amendment.
        2. The trial court erred by concluding that it had jurisdiction
    over Asher under MCL 600.705(2). Under subsection (2) of Michi-
    gan's long-arm statute, MCL 600.705(2), a court may exercise

limited personal jurisdiction over an individual if a relationship exists between an individual or his or her representative and the state arising out of doing an act or causing an act to be done, or consequences to occur, in this state resulting in a tort action. In the case of an alleged conspiracy, a conspirator not within the forum state may be subject to the jurisdiction of the forum state on the basis of the acts the coconspirator committed there. To establish a prima facie case, a party may not merely allege that a conspiracy exists between the defendant and another party over whom the court has jurisdiction; rather, evidence or facts must support the allegations of conspiracy. A prima facie case may be established using reasonable inferences provided there is sufficient evidence introduced to take the inferences out of the realm of conjecture; there must be evidence that supports one theory of causation, indicating a logical sequence of cause and effect. Zalcberg failed to establish a prima facie case that Asher committed the tort of abuse of process in Michigan. In his affidavit, Asher denied that he had conspired with Yoost to file this instant action and denied that he had directed the litigation. Yoost also averred that Asher had no involvement with the initiation of the action. Zalcberg failed to establish limited personal jurisdiction over Asher under the long-arm statute because he did not produce evidence to establish a prima facie case that Asher had conspired with Yoost to initiate and direct the litigation. The fact that Asher had paid Yoost's legal fees, that during his deposition Yoost did not recall reading the complaint filed in this case, and that Yoost discussed with Asher the details of a prior Indiana litigation involving him and Zalcberg at some point did not establish a prima facie case. The circumstantial evidence presented was mere speculation and did not establish a logical sequence of cause and effect to reach the conclusion that Asher controlled the litigation through Yoost.

3. Under MCL 600.705(1), a court may exercise limited personal jurisdiction over a party for actions arising out of the transaction of any business within the state. The trial court properly held that MCL 600.705(1) could not provide a basis for limited personal jurisdiction. There was no evidence that Asher contracted for an attorney to represent Yoost in this Michigan action, and there was no prima facie evidence that Asher controlled or directed this litigation that would allow the trial court to exercise limited personal jurisdiction over Asher under MCL 600.705(1).

4. It was unnecessary to reach the due process issue because of Zalcberg's failure to establish a prima facie case.

Reversed and remanded for entry of an order granting Asher summary disposition.

1. COURTS — JURISDICTION — LIMITED PERSONAL JURISDICTION — LONG-ARM STATUTE.

A court must have personal jurisdiction over a party before it may require the party to comply with its orders; while the plaintiff bears the burden of establishing jurisdiction over the defendant, he or she need only make a prima facie showing of jurisdiction to defeat a motion for summary disposition; if the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the presentation of contrary evidence by the moving party; to determine whether a Michigan court may exercise limited personal jurisdiction over a defendant, this Court must determine (1) whether jurisdiction is authorized by Michigan's long-arm statute and (2) whether the exercise of jurisdiction is consistent with the requirements of the Due Process Clause of the Fourteenth Amendment.

2. COURTS — JURISDICTION — LIMITED PERSONAL JURISDICTION — LONG-ARM STATUTE — CONSPIRACY — PRIMA FACIE EVIDENCE.

A Michigan court may exercise limited personal jurisdiction over an individual if a relationship exists between an individual or his or her representative and the state arising out of doing an act or causing an act to be done, or consequences to occur, in the state resulting in an action for tort; if conspiracy is alleged as the basis for jurisdiction, a conspirator not within the forum state may be subject to the jurisdiction of the forum state on the basis of the acts the coconspirator committed there; to establish a prima facie case the party may not merely allege that a conspiracy exists between the defendant and another party over whom the court has jurisdiction; rather, evidence or facts must support the allegations of conspiracy; a prima facie case may be established using reasonable inferences provided there is sufficient evidence introduced to take the inferences out of the realm of conjecture; there must be evidence that supports one theory of causation indicating a logical sequence of cause and effect (MCL 600.705[2]).

*Smietanka, Buckleitner, Steffes & Gezon* (by *Anne Buckleitner*) and *Jones Day* (by *June K. Ghezzi, Brian J. Murray,* and *Erin Shencopp*) for Hank Asher.

*Burdick & Engeln, P.C.* (by *Carl R. Burdick*), and *Hughes, Socol, Piers, Resnick & Dym, Ltd.* (by *José J. Behar, Juliet Berger-White,* and *Matthew J. Piers*), for Irwin C. Zalcberg.

Before: OWENS, P.J., and MARKEY and METER, JJ.

PER CURIAM. Counterdefendant Hank Asher appeals by leave granted the trial court's order denying his motion for summary disposition under MCR 2.116(C)(1). He asserts that the trial court erred by ruling it that had limited jurisdiction over him under Michigan's long-arm statute, MCL 600.705(2), on the basis that defendant/counterplaintiff Irwin C. Zalcberg (Zalcberg) made a prima facie showing that Asher conspired with plaintiff, Wally Yoost, to commit the tort of abuse of process in Michigan. We reverse and remand for entry of an order granting Asher summary disposition.

### I. SUMMARY OF FACTS AND PROCEEDINGS

Wally Yoost and Hank Asher are both citizens and residents of Florida. Zalcberg and defendants Patricia Caspari and Ellen Frankle are all residents of Michigan. Zalcberg is the sole shareholder and officer of Zalcberg Holdings, Inc, an Illinois corporation; he is in the business of trading equities and options from his home. Zalcberg employed Yoost from the fall of 1999 until early 2005. Yoost contends he worked as a trader and also provided estate management services for Zalcberg's wife, Sari. Zalcberg describes Yoost's employment as that of personal trainer, intern, and personal assistant. During Yoost's employment, Yoost met Patricia Caspari. They became romantically involved and began living together in 2001, in Michigan Shores,

Indiana. Caspari often visited Yoost at Zalcberg's residence and became acquainted with Zalcberg. Yoost became acquainted with Lawrence Frankle, Zalcberg's personal friend, business partner, and legal counsel. Yoost claims that he often sought legal advice from Frankle.

In 2002, Zalcberg and Sari loaned Yoost $67,000, secured by a note and mortgage executed October 29, 2002, to purchase a house on Fogarty Street in Michigan City, Indiana. Also on October 29, 2002, Caspari quitclaimed any interest in the Fogarty property to Yoost. Yoost asserts that Frankle drafted the quitclaim deed as a means of protecting Yoost's interest in the property while he cohabitated with Caspari. Yoost and Caspari subsequently resided in the house on Fogarty Street and began making improvements.

Yoost alleges that in 2003 he informed Zalcberg that he was dissatisfied with his employment. Yoost asserts that Zalcberg enticed his continued employment by releasing him from any further obligations on the Fogarty property note and mortgage. Yoost continued working for Zalcberg and stopped making payments on the note and mortgage.

In 2004, Yoost and Caspari moved to Galien, Michigan, where they lived together. They rented out the Fogarty property. Yoost worked for Zalcberg until March 2005. Zalcberg filed for a divorce from Sari, who was suffering from terminal cancer, in March 2005; the divorce was final on March 28, 2006. Zalcberg contends that Asher, his former brother-in-law, harbored ill will against him since he filed for the divorce from Sari. Yoost and Caspari's relationship also ended in December 2005. Yoost subsequently moved to Florida and worked for Asher. In August 2006, Zalcberg began foreclosure proceedings on the Fogarty property in

Indiana. Yoost defended the foreclosure action by asserting his claim that Zalcberg had forgiven the debt. Yoost also asserted other defenses, including that Zalcberg had failed to fulfill his oral promise to share certain trading profits with Yoost. See *Yoost v Zalcberg*, 925 NE2d 763 (Ind App, 2010). Yoost also attempted to assert a claim for trading profits in a suit for an accounting filed in Illinois against Zalcberg Holdings. That case was dismissed shortly after the instant case was initiated on the basis of forum non conveniens because the claim for profits concerned conduct that had occurred in Michigan and Indiana and could be joined to the already pending litigation in Indiana to which Zalcberg, the sole shareholder of Zalcberg Holdings, was a party.

Yoost filed the instant lawsuit against Caspari on April 8, 2008, alleging that she had attempted to extort a 50 percent interest in the Fogarty property by threatening to report Yoost to the IRS for not paying taxes on his income while working for Zalcberg. The complaint also alleged intentional infliction of emotional distress. After the discovery of numerous e-mails between Caspari and Zalcberg that suggested that Zalcberg and Frankle had encouraged Caspari's actions, Yoost was permitted to file an amended complaint adding Zalcberg and Frankle as defendants. By stipulation of the parties, Yoost filed a second amended complaint that substituted Ellen Frankle as the personal representative of the estate of Lawrence Frankle.

On January 28, 2009, Zalcberg filed a counterclaim in this case against Yoost and Asher alleging abuse of process and conspiracy to commit abuse of process. Zalcberg's counterclaim alleged, in part, that "Yoost and Asher agreed to join together in the concerted actions of Asher paying for and, on information and

belief, directing a series of false and fraudulent legal claims filed in Yoost's name and against Zalcberg in the Indiana litigation for ulterior purposes . . . including punishing, humiliating and embarrassing Zalcberg, extorting from him large sums of business profits," and interfering with "a proper mortgage foreclosure action." Zalcberg also alleged that Asher and Yoost had filed other lawsuits in Yoost's name in Illinois and Michigan for similar purposes and to intimidate witnesses favorable to Zalcberg and obtain discovery unavailable in Indiana. In this case, Zalcberg alleges that "Asher and Yoost, in Yoost's name," assert "false and fabricated claims and seek[] grossly overreaching and irrelevant discovery." With respect to discovery in the instant case, Zalcberg alleges that the trial court "denied [Yoost's] request to hold Zalcberg in contempt and entered a protective order denying the request for production of Zalcberg's trading and other business records." Zalcberg alleged that the abuse of process caused him "financial losses, loss of business opportunities, and the expense of defending against fraudulent claims and abusive discovery." Last, the counterclaim alleges that the actions of Asher and Yoost amounted to a civil conspiracy, resulting in the damages just described.

On May 29, 2009, Asher moved for summary disposition of Zalcberg's counterclaim pursuant to MCR 2.116(C)(1), asserting that the trial court lacked personal jurisdiction over him because he was a resident of Florida and had neither engaged in any business in Michigan nor had any qualifying contacts with the state. Asher further argued that the trial court could not exercise limited personal jurisdiction over him under Michigan's long-arm statute, MCL 600.705, and that Michigan's exercising jurisdiction over him would violate due process.

In support of his motion, Asher appended his own affidavit, which averred that he was a Florida resident, had not transacted any business in Michigan, and denied having "done or caused an act to be done, or caused consequences to occur in Michigan, resulting in an action for tort." Asher acknowledged that he had employed Yoost since 2006, that he knew of litigation between Yoost and Zalcberg, and that he had "advanced money to Yoost's counsel" in Illinois and Indiana. However, Asher averred that he had "not caused litigation in Yoost's name to be brought or consequences to occur in any state against Irwin Zalcberg" and that he had "not involved [himself] in the decisions that Yoost and his lawyers have made with regard to how to proceed in any of the litigation between Yoost, Irwin Zalcberg, and the others." Asher further averred that he "did not execute a letter of retention with Yoost's attorneys in any state" and that with respect to Yoost's legal fees, "Yoost's lawyers in Illinois and Indiana send work invoices to my staff in Florida for payment."

Zalcberg filed a response opposing the motion and submitted excerpts of Yoost's testimony from depositions in the Indiana litigation. Zalcberg also contended that Asher's affidavit failed to comply with MCR 2.119(B)(1)(c) because it did not show affirmatively that Asher, if sworn as a witness, could testify competently to the facts stated in the affidavit. The trial court denied the motion. The court found that it lacked general jurisdiction over Asher and rejected the argument that it had limited jurisdiction under MCL 600.705(1) for the "transaction of any business within the state." But the trial court ruled that it had limited jurisdiction under MCL 600.705(2), which provides limited personal jurisdiction arising out of "doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort." The court explained:

[I]f the allegations in the complaint are true, there is no doubt that Asher caused an act to be done and consequences to occur in Michigan resulting in an action in tort, if those allegations are true that he is using this law suit for ulterior motives.

Here there is some documentary evidence . . . to support the position of Zalcberg that the motion should not be granted. And that's the deposition testimony of Yoost regarding Asher's payment of legal fees under what I might describe as curious circumstances and . . . Yoost's lack of recall as to whether he even read the complaint that was filed in this case. And I believe that . . . this testimony, as well as the testimony of Yoost, that he did discuss the details of the Indiana case with Asher could support an inference that Yoost in this case is the puppet and Asher is the puppeteer.

\* \* \*

Moreover, with regard to the affidavit that Asher filed, and while I'm finding that even in the face of that affidavit there would be sufficient evidence in this case to deny the motion based on what I had previously said, I also find that the affidavit is defective. . . . [MCR] 2.119(B) governs the form of the affidavit. And it must affirmatively show that if sworn as a witness . . . the affiant can competently testify to the facts set forth, and it also . . . has to be made on personal knowledge. And it does not aver that and it does not aver that he can confidently [sic] testify to the facts set forth therein. So I think technically it's deficient. But even if it weren't I would deny the motion on the basis of what I have previously said.

As far as the due process . . . is concerned, the allegation and the factual support inferences drawn there from are sufficient to invoke the Michigan long arm statute as I have previously ruled for limited personal jurisdiction and also it would overcome any due process arguments.

In rendering its ruling, the trial court specifically noted that it was without prejudice because "something

might happen in the future that changes my ruling." Thereafter, Asher filed a renewed motion for summary disposition pursuant to MCR 2.116(C)(1), again arguing that the court lacked personal jurisdiction over him. Asher also asserted that Zalcberg had not stated a claim for abuse of process, MCR 2.116(C)(8). In support, Asher provided the court with a new affidavit that satisfied MCR 2.119(B) and contained all the same averments as the first affidavit. In addition, Asher also denied that he had caused or done anything resulting in a tort in Michigan and, specifically, that he had not done "the acts I am alleged to have done that gave rise to this lawsuit." Specifically, Asher denied that he had "caused or induced [Yoost] to sue anyone in Michigan. I did not cause this lawsuit to be filed."

Asher also submitted an affidavit from Yoost, which stated that Yoost "voluntarily brought the causes of action against Zalcberg and Caspari" and that "Asher did not tell me to start this lawsuit, and did not tell me to add Zalcberg as a defendant." Yoost admitted that Asher "advanced money to pay my legal expenses in this litigation." Regarding his deposition testimony concerning reviewing the complaint he filed, Yoost stated that a recent review of the complaint and amended complaint in this case had refreshed his memory and averred that "I reviewed both the Complaint and Amended Complaint before they were filed in this case."

The trial court characterized Asher's renewed motion as being one for reconsideration and denied the motion, explaining that "it merely rehashes what I ruled on before." As for Yoost's affidavit, the trial court considered it an impermissible attempt to contradict his deposition testimony. The trial court also denied Asher's motion for summary disposition under MCR

2.116(C)(8), ruling that Zalcberg had alleged a claim of abuse of process that was supported by "one act alleged in furtherance of these allegations of ill - - of ulterior motive and that is the discovery process."

On November 6, 2009, this Court granted Asher's application for leave to appeal, limited to the issues raised in the application, which were whether the trial court had erred in ruling it had limited personal jurisdiction over Asher under Michigan's long-arm statute and, if so, whether the requirements of due process were satisfied. This Court also granted Asher's motion for a stay of discovery pending resolution of this appeal.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial judge's decision on a motion for summary disposition. *Dalley v Dykema Gossett PLLC*, 287 Mich App 296, 304; 788 NW2d 679 (2010). The legal question of whether a court possesses personal jurisdiction over a party is also reviewed de novo. *W H Froh, Inc v Domanski*, 252 Mich App 220, 225; 651 NW2d 470 (2002). This case also presents the legal question of whether the exercise of personal jurisdiction over a nonresident such as Asher is consistent with the notions of fair play and substantial justice required by the Due Process Clause of the Fourteenth Amendment, which we likewise review de novo. *Jeffrey v Rapid American Corp*, 448 Mich 178, 184-186; 529 NW2d 644 (1995).

The parties disagree regarding the standard of review applicable to Asher's renewed motion for summary disposition. Zalcberg notes that the trial court properly treated the renewed motion as one for reconsideration, which is reviewed for an abuse of discretion. *Woods v SLB Property Mgt LLC*, 277 Mich App 622, 629; 750 NW2d 228 (2008). "An abuse of discretion occurs when

the decision results in an outcome falling outside the principled range of outcomes." *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006). But Asher argues that because the court's jurisdiction is at issue, we must review the renewed motion de novo. *Jeffrey*, 448 Mich at 184. We agree that our review of the trial court's ultimate determination that it possessed limited personal jurisdiction over Asher is de novo.

Ordinarily, a trial court has discretion on a motion for reconsideration to decline to consider new legal theories or evidence that could have been presented when the motion was initially decided. MCR 2.119(F)(3); *Woods*, 277 Mich App at 629-630. But the trial court also has the discretion to give a litigant a "second chance" even if the motion for reconsideration presents nothing new. *Hill v City of Warren*, 276 Mich App 299, 306-307; 740 NW2d 706 (2007); *In re Moukalled Estate*, 269 Mich App 708, 714; 714 NW2d 400 (2006). In this case, the trial court initially found that Asher's affidavit was defective, but indicated that even if it were not, the court would still rule that it had limited personal jurisdiction. At the hearing on the renewed motion, the trial court again ruled that Asher's corrected affidavit was insufficient because Asher "merely rehashes what I ruled on before." Likewise, the trial court considered but rejected Yoost's affidavit, not only because it was untimely, but also because the court determined that its substance merely attempted to contradict Yoost's deposition testimony. Because the trial court considered the affidavits in making its ruling, we include them in our review de novo of the trial court's ultimate determination that it possessed limited personal jurisdiction over Asher.

Moreover, the question presented is jurisdictional and of constitutional magnitude. "[A] court is continu-

ally obliged to question sua sponte its own jurisdiction over a person, the subject matter of an action, or the limits of the relief it may afford . . . ." *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 399; 651 NW2d 756 (2002). "Before a court may obligate a party to comply with its orders, the court must have in personam jurisdiction over the party." *Oberlies v Searchmont Resort, Inc*, 246 Mich App 424, 427; 633 NW2d 408 (2001). In light of the importance of the issue, to the extent that the trial court failed to consider the affidavits of Asher and Yoost in rendering its jurisdictional ruling, MCR 2.116(G)(5)—even though they were filed with a motion for reconsideration—we conclude that the trial court abused its discretion.

### III. ANALYSIS

When reviewing a trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(1), the trial court and this Court consider the pleadings and documentary evidence submitted by the parties in a light most favorable to the nonmoving party. MCR 2.116(G)(5); *Oberlies*, 246 Mich App at 427. "The plaintiff bears the burden of establishing jurisdiction over the defendant, but need only make a prima facie showing of jurisdiction to defeat a motion for summary disposition." *Jeffrey*, 448 Mich at 184. The plaintiff's complaint must be accepted as true unless specifically contradicted by affidavits or other evidence submitted by the parties. *Patterson v Kleiman*, 447 Mich 429, 434 n 6; 526 NW2d 879 (1994). Thus, when allegations in the pleadings are contradicted by documentary evidence, the plaintiff may not rest on mere allegations but must produce admissible evidence of his or her prima facie case establishing jurisdiction. MCR 2.116(G)(6); *Mozdy v Lopez*, 197 Mich App 356, 361; 494 NW2d 866 (1992). The protocol for reviewing the jurisdic-

tional issues presented here is summarized well in *Williams v Bowman Livestock Equip Co*, 927 F2d 1128, 1130-1131 (CA 10, 1991),[1] quoting *Behagen v Amateur Basketball Ass'n*, 744 F2d 731, 733 (CA 10, 1984):

> "The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."

When examining whether a Michigan court may exercise limited personal jurisdiction over a defendant, this Court employs a two-step analysis. *Jeffrey*, 448 Mich at 184-185; *Domanski*, 252 Mich App at 226. "First, this Court ascertains whether jurisdiction is authorized by Michigan's long-arm statute. Second, this Court determines if the exercise of jurisdiction is consistent with the requirements of the Due Process Clause of the Fourteenth Amendment." *Electrolines, Inc v Prudential Assurance Co, Ltd*, 260 Mich App 144, 167; 677 NW2d 874 (2003) (citations omitted). Both prongs of this analysis must be satisfied for a Michigan court to properly exercise limited personal jurisdiction over a nonresident. See *Green v Wilson*, 455 Mich 342, 350-351; 565 NW2d 813 (1997) (KELLY, J.); *id.* at 361 (MALLETT, C.J.). "Long-arm statutes establish the nature, character, and types of contacts that must exist for purposes of exercising personal jurisdiction. Due pro-

---

[1] *Williams* and *Mozdy* are both cited by our Supreme Court in *Jeffrey*, 448 Mich at 184, when discussing the appropriate standard of review of jurisdictional issues.

cess, on the other hand, restricts permissible long-arm jurisdiction by defining the quality of contacts necessary to justify personal jurisdiction under the constitution." *Id.* at 348.

In *Mozdy*, 197 Mich App at 359, this Court stated the three-part test for determining if exercising limited personal jurisdiction comports with due process:

> First, the defendant must have purposefully availed itself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws. Second, the cause of action must arise from the defendant's activities in the state. Third, the defendant's activities must be substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable.

In the present case, we need not consider whether the exercise of limited personal jurisdiction over Asher comports with due process because we conclude that Zalcberg failed to establish a prima facie case against Asher that satisfied MCL 600.705. Consequently, the trial court erred by not granting Asher's motion for summary disposition under MCR 2.116(C)(1).

The trial court determined that it had limited personal jurisdiction over Asher under MCL 600.705(2), which provides:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

\* \* \*

(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

The trial court's ruling that Zalcberg's counterclaim satisfied MCL 600.705(2) was based on two premises: (1) Zalcberg's counterclaim alleged a prima facie case that Yoost committed the tort of abuse of process in Michigan and (2) there was evidence to support an inference that Asher controlled this litigation through Yoost, i.e., in the trial court's words, that "Yoost in this case is the puppet and Asher is the puppeteer." Our review de novo of the pleadings and evidence submitted by the parties convinces us that Zalcberg failed to establish a prima facie case that Asher committed the tort of abuse of process in Michigan. Moreover, Zalcberg failed to present evidence to establish a prima facie case that Asher directed, controlled, or conspired with Yoost regarding this litigation or its conduct.

### A. CONSPIRACY AND CAUSATION

Zalcberg failed to establish a prima facie case that Asher conspired with Yoost to do an act, or otherwise caused "an act to be done, or consequences to occur," in Michigan resulting in an action for tort.[2] MCL 600.705(2).

Under the "conspiracy theory" of jurisdiction, a conspirator not within the forum state may nevertheless be subject to the jurisdiction of the forum state on the basis of the acts a coconspirator committed there. *Chrysler Corp v Fedders Corp*, 643 F2d 1229, 1236-1237 (CA 6, 1981). The rationale for this rule is that when one member of a conspiracy "inflicts an actionable

---

[2] We note there is no civil action for conspiracy alone; there must be an underlying actionable tort. *Earp v Detroit*, 16 Mich App 271, 275; 167 NW2d 841 (1969).

wrong in one jurisdiction, the other member should not be allowed to escape being sued there by hiding in another jurisdiction." *Stauffacher v Bennett*, 969 F2d 455, 459 (CA 7, 1992). But mere allegations that a conspiracy exists between the defendant and another over whom the court has jurisdiction are insufficient. *Id.* at 460; *Chrysler Corp*, 643 F2d at 1236-1237. Rather, evidence or facts must support the allegations of conspiracy. *Chrysler Corp*, 643 F2d at 1236-1237; *Ecclesiastical Order of the Ism of Am, Inc v Chasin*, 845 F2d 113, 116 (CA 6, 1988); *Coronet Dev Co v FSW, Inc*, 3 Mich App 364, 369; 142 NW2d 499 (1966).

In this case, Asher in his affidavits denied Zalcberg's allegations of conspiring with Yoost and also denied directing this litigation. Yoost also averred that he "voluntarily brought the causes of action against Zalcberg and Caspari" and that "Asher did not tell me to start this lawsuit, and did not tell me to add Zalcberg as a defendant."[3] Because Zalcberg's allegations that Asher conspired by Yoost or directed this lawsuit were contradicted by evidence, Zalcberg was required to produce evidence to establish a prima facie case that Asher, in fact, conspired with Yoost or otherwise directed this litigation in order to meet his burden of establishing limited personal jurisdiction under MCL 600.705(2). *Jeffrey*, 448 Mich at 184; *Mozdy*, 197 Mich at 361.

A "prima facie case" is defined in Black's Law Dictionary (5th ed) as " 'one that will entitle [a] party to recover if no evidence to contrary is offered by [the] opposite party.' " *Dep't of Environmental Quality v*

---

[3] Even if one paragraph of Yoost's affidavit attempted to contradict his deposition testimony, the remaining parts of the affidavit are not thereby invalidated. Further, remembering a fact at a later time does not contradict earlier lack of recall. It may, however, affect credibility.

*Worth Twp*, 289 Mich App 414, 419; 808 NW2d 260 (2010). Similarly, our Supreme Court has defined a prima facie case as " '[a] case made out by proper and sufficient testimony; one which is established by sufficient evidence, and can be overthrown only by rebutting evidence adduced on the other side.' " *People v Licavoli*, 264 Mich 643, 653; 250 NW 520 (1933) (citations omitted). "Prima facie evidence" is defined as " '[e]vidence good and sufficient on its face . . . to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient.' " *Worth Twp*, 289 Mich App at 419, quoting Black's Law Dictionary (5th ed).

While Asher and Yoost submitted affidavits contradicting Zalcberg's claims regarding Asher's directing this litigation, factual disputes must be resolved in Zalcberg's favor on Asher's motion for summary disposition under MCR 2.116(C)(1). *Jeffrey*, 448 Mich at 184. Zalcberg need only present evidence sufficient to establish prima facie his jurisdictional claims " 'notwithstanding the contrary presentation by the moving party.' " *Williams*, 927 F2d at 1131, quoting *Behagen*, 744 F2d at 733. A party may establish a case with circumstantial evidence. *Karbel v Comerica Bank*, 247 Mich App 90, 97; 635 NW2d 69 (2001). And a prima facie case may be established using reasonable inferences provided sufficient evidence is introduced to take the inferences out of the realm of conjecture. *Berryman v Kmart Corp*, 193 Mich App 88, 92; 483 NW2d 642 (1992).

The trial court found a prima facie case for Zalcberg's jurisdictional claims on the basis of Yoost's testimony in depositions taken as part of the Indiana litigation that provided evidence of three facts: (1) Asher paid Yoost's legal fees under "curious circumstances," (2) Yoost did not recall during his deposition reading the complaint filed in

this case, and (3) Yoost at some point discussed the details of the Indiana case with Asher. These three facts either individually or combined do not provide a logical chain of inference to conclude that Asher in fact conspired with Yoost or otherwise directed this litigation. That Asher paid Yoost's legal fees does not establish that Asher exercised control over Yoost in this litigation. Asher could have done so because he liked and wanted to help Yoost or because he disliked Zalcberg. But the mere fact that Asher paid Yoost's litigation expenses does not logically lead to the conclusion that Asher controlled Yoost or the instant litigation. Yoost's poor memory or failure to read the complaint in this case, even viewed in the light most favorable to Zalcberg, does not bridge the gap to the jurisdictionally required showing that Asher controlled Yoost and through him this litigation. The fact that Yoost discussed the Indiana litigation with Asher provides even less evidence that Asher controlled this litigation through Yoost. Moreover, under Michigan's rules of professional conduct, Yoost's attorneys could not ethically have permitted Asher to control Yoost's litigation. MRPC 1.8(f) provides:

> A lawyer shall not accept compensation for representing a client from one other than the client unless:
>
> (1) the client consents after consultation;
>
> (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and
>
> (3) information relating to representation of a client is protected . . . ."

In short, a gap that can only be filled with speculation exists with respect to the three facts that the trial court relied on to reach the conclusion that Asher controlled this litigation through Yoost, a conclusion that is necessary to obtain limited personal

jurisdiction over Asher. "To be adequate, a plaintiff's circumstantial proof must facilitate reasonable inferences . . . , not mere speculation." *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994). Explaining the difference between reasonable inference and speculation and conjecture, the *Skinner* Court, *id.*, quoted *Kaminski v Grand Trunk W R Co*, 347 Mich 417, 422; 79 NW2d 899 (1956):

> "[A] conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only. On the other hand, if there is evidence which points to any 1 theory of causation, indicating *a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.*" [Emphasis added; see also *Karbel*, 247 Mich App at 98.]

Here, multiple explanations exist for the facts the trial court relied on to assert jurisdiction. Evidence is simply lacking to establish "a logical sequence of cause and effect" to reach the conclusion that Asher controlled this litigation through Yoost to the extent that "Yoost in this case is the puppet and Asher is the puppeteer." Rather, this conclusion is reached only through speculation and conjecture, which are insufficient to establish a prima facie case for limited personal jurisdiction over Asher. *Jeffrey*, 448 Mich at 184; see *Berryman*, 193 Mich App at 92.

### B. THE TRANSACTION OF ANY BUSINESS WITHIN THE STATE

In the trial court, Zalcberg asserted that the exercise of limited personal jurisdiction over Asher was also

proper under MCL 600.705(1) for actions "arising out of" the "transaction of any business within the state." The trial court rejected this basis for asserting jurisdiction because "payment of the legal fees, which may ultimately go to lawyers in Michigan who represent Yoost, is not a sufficient tie to Michigan to cause the defendant Asher to submit himself to the jurisdiction of this state." Zalcberg did not file a cross-appeal regarding the trial court's rejection of this basis for long-arm jurisdiction. When leave to appeal is granted, unless the Court directs otherwise, the appeal is limited to the issues raised in the application. MCR 7.205(D)(4); *Detroit Free Press, Inc v Southfield*, 269 Mich App 275, 290; 713 NW2d 28 (2005). Zalcberg, however, asserts that MCL 600.705(1) provides an alternative basis for affirming the trial court. See *Middlebrooks v Wayne Co*, 446 Mich 151, 166 n 41; 521 NW2d 774 (1994). We conclude that the trial court correctly ruled that MCL 600.705(1) does not provide a basis for limited personal jurisdiction over Asher.

The word "any" within the statute has been interpreted to "include[] 'each' and 'every.' It comprehends 'the slightest.' " *Sifers v Horen*, 385 Mich 195, 199 n 2; 188 NW2d 623 (1971) (citations omitted). In *Sifers*, the Michigan plaintiff negotiated for the services of a Kentucky attorney, while the attorney was in Michigan, to bring a lawsuit in Kentucky. The plaintiff later sued the Kentucky attorney in Michigan for malpractice. The *Sifers* Court held that the negotiations in Michigan resulting in the defendant's retainer were within the meaning of the transaction of any business. *Id.* at 199.

In *Alan B McPheron, Inc v Koning*, 125 Mich App 325; 336 NW2d 474 (1983), the defendant Michigan resident sent his agent to Oklahoma to sell an airplane. When the sales negotiations broke down, the agent tried to take the

plane back to Michigan but was arrested. The defendant then hired the plaintiff, an Oklahoma attorney, to represent the defendant's agent. When the defendant failed to pay for all the legal services provided, the plaintiff obtained a default judgment against him in Oklahoma and sought to enforce the judgment in Michigan. *Id.* at 327-328. This Court held that because the defendant sought and contracted for the plaintiff's services to be performed in Oklahoma, "it is reasonable to conclude that he ought to have been prepared to travel to Oklahoma to challenge these services if he felt they were rendered improperly." *Id.* at 331. This Court opined that the Oklahoma court had properly exercised jurisdiction over the defendant under its long-arm statute, which was similar to MCL 600.705(1), and that due process was also satisfied. *Id.* at 331-334.

*Sifers* and *McPheron* are the main cases on which Zalcberg relies for his alternative argument that the trial court's jurisdictional ruling should be affirmed under MCL 600.705(1). We find each case clearly distinguishable from the facts as established by the evidence submitted on Asher's motion for summary disposition. In each case, a resident of one state contracted with an attorney in another state for legal services. In each case, the subsequent legal action arose out of the contract for legal services and was by or against the attorney who had performed the legal services. In this case, there is no evidence that Asher contracted for the services of any attorney to represent Yoost in Michigan. Although Asher admits making payments on Yoost's legal fees outside Michigan, Asher avers that he did not contract for the services and did not control the litigation. Additionally, Zalcberg's counterclaim is not an action between the parties to the legal services contract as in *Sifers* and *McPheron*. Finally, for the reasons stated in part III(A) of this opinion, even if this litiga-

tion constitutes the "transaction of any business within the state," there was no prima facie evidence that Asher controlled or directed the litigation to permit the trial court to exercise limited personal jurisdiction over Asher under MCL 600.705(1). Consequently, we conclude the trial court correctly ruled that this subsection did not authorize it to exercise limited personal jurisdiction over Asher.

## IV. CONCLUSION

For these reasons, we conclude that the trial court erred by ruling that it could exercise limited personal jurisdiction over Asher under MCL 600.705(2). We also conclude that MCL 600.705(1) does not provide an alternative basis to affirm the trial court's jurisdictional ruling. Because Zalcberg did not establish a prima facie case for the exercise of limited personal jurisdiction over Asher under MCL 600.705, the trial court erred by not granting his motion for summary disposition under MCR 2.116(C)(1). Also, because Michigan's long-arm statute has not been satisfied, we need not consider whether the exercise of limited personal jurisdiction over Asher comports with the requirements of due process. See *Jeffrey*, 448 Mich 184-185; *Oberlies*, 246 Mich App at 427-428, 432. We therefore reverse and remand this matter for entry of an order granting Asher summary disposition. We do not retain jurisdiction. As the prevailing party, Asher may tax costs pursuant to MCR 7.219.

OWENS, P.J., and MARKEY and METER, JJ., concurred.