# STATE OF MICHIGAN

# COURT OF APPEALS

UNITED SHORE FINANCIAL SERVICES, LLC
d/b/a UNITED WHOLESALE MORTGAGE f/k/a
SHORE FINANCIAL SERVICES d/b/a UNITED
WHOLESALE MORTGAGE,

UNPUBLISHED
October 28, 2014

Plaintiff-Appellant,

v

No. 316895
Oakland Circuit Court
LC No. 2012-129938-CK

WILLIAM P. LALLY,

Defendant-Appellee.

Before: STEPHENS, P.J., and TALBOT and BECKERING, JJ.

PER CURIAM.

Plaintiff, United Shore Financial Services, LLC, appeals as of right from the trial court's order granting defendant, William Lally, summary disposition pursuant to MCR 2.116(C)(1) (lack of personal jurisdiction). We affirm.

## I. BACKGROUND

Defendant is a California resident. Plaintiff is a Michigan-based limited liability company licensed to do business in Michigan with its principal place of business in Birmingham, Michigan. In 2006, intending to purchase property in Florida, defendant sought the services of plaintiff and entered into a mortgage loan transaction with plaintiff. The $114,750 loan was secured with a 30-year mortgage on the Florida property. According to the terms of the accompanying note, defendant was to submit his monthly loan payments to plaintiff in Birmingham. According to plaintiff, defendant failed to honor his agreement to pay back the loan, so plaintiff filed suit in Michigan raising claims of breach of promissory note, breach of contract, and unjust enrichment. Defendant responded by filing a motion to dismiss for lack of personal jurisdiction.

The trial court granted defendant's motion to dismiss, finding that the exercise of personal jurisdiction over defendant was not appropriate under Michigan's long-arm statute because defendant did not engage in any business within Michigan. In addition, the trial court declined to exercise limited personal jurisdiction over defendant because it found that doing so would not comport with due process. Notably, the trial court concluded that plaintiff did not

purposefully avail himself of the benefits and protections of Michigan law. Further, it found that plaintiff's claim did not arise from defendant's actions in Michigan, as all of the documents in this case—the mortgage and the note—were signed outside of Michigan. Subsequently, the trial court denied plaintiff's motion for reconsideration.

## II.  STANDARD OF REVIEW

We review de novo the trial court's decisions on personal jurisdiction and summary disposition. *Jeffrey v Rapid American Corp*, 448 Mich 178, 184; 529 NW2d 644 (1995); *Yoost v Caspari*, 295 Mich App 209, 219; 813 NW2d 783 (2012).

> When reviewing a trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(1), the trial court and this Court consider the pleadings and documentary evidence submitted by the parties in a light most favorable to the nonmoving party. The plaintiff bears the burden of establishing jurisdiction over the defendant, but need only make a prima facie showing of jurisdiction to defeat a motion for summary disposition. The plaintiff's complaint must be accepted as true unless specifically contradicted by affidavits or other evidence submitted by the parties. Thus, when allegations in the pleadings are contradicted by documentary evidence, the plaintiff may not rest on mere allegations but must produce admissible evidence of his or her prima facie case establishing jurisdiction. [*Yoost*, 295 Mich App at 221 (citations and quotations omitted).]

## III.  LIMITED PERSONAL JURISDICTION

Whether Michigan courts can exercise limited personal jurisdiction over a nonresident defendant is a two-part inquiry, requiring a court to determine, under the circumstances, that Michigan's long-arm statute applies and that the exercise of jurisdiction does not violate due process principles. *Id.* at 222.

### A. MICHIGAN'S LONG-ARM STATUTE

The relevant section of the long-arm statute is MCL 600.705, which sets forth limited personal jurisdiction over nonresident defendants. It provides in pertinent part as follows:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> (1) The transaction of any business within the state.

As used within the statute, "any" has been interpreted to include "each" and "every," including even "the slightest" contact. *Yoost*, 295 Mich App at 229. Although we have yet to interpret the

phrase "transaction of any business" within the context of MCL 600.705(1), in *Oberlies v Searchmont Resort, Inc*, 246 Mich App 424, 430; 633 NW2d 408 (2001), we interpreted the phrase "transaction of any business" in MCL 600.715(1), which concerns the exercise of personal jurisdiction over nonresident corporate defendants, as follows:

> "Transact" is defined as "to carry on or conduct (business, negotiations, etc.) to a conclusion or settlement." *Random House Webster's College Dictionary* (1997). "Business" is defined as "an occupation, profession, or trade . . . the purchase and sale of goods in an attempt to make a profit." *Id.* Our Legislature's use of the word "any" to define the amount of business that must be transacted establishes that even the slightest transaction is sufficient to bring a corporation within Michigan's long-arm jurisdiction. See *Sifers v Horen*, 385 Mich 195, 199 n 2, 188 NW2d 623 (1971) (stating that MCL 600.715(1) refers to "each" and "every" business transaction and contemplates even "the slightest" act of business in Michigan), and *Viches v MLT, Inc.*, 127 F Supp 2d 828, 830 (ED Mich, 2000) (Judge Paul Gadola stating: "The standard for deciding whether a party has transacted any business under § 600.715[1] is extraordinarily easy to meet. 'The only real limitation placed on this [long arm] statute is the due process clause.'" [citation omitted]).

Given that the phrase "transaction of any business" as used in MCL 600.705(1) is identical to the phrase we interpreted in *Oberlies*, we adopt the definition set forth above in determining whether defendant's conduct amounted to the "transaction of any business" in the case at bar. See *The Cadle Co v Kentwood*, 285 Mich App 240, 249; 776 NW2d 145 (2009) ("Identical terms in different provisions of the same act should be construed identically . . . .").

Defendant's actions place him within the reach of MCL 600.705(1). According to the affidavit of Katherine Welty, plaintiff's chief risk officer, defendant submitted a loan application to plaintiff either personally or through his Florida mortgage broker. As a result, defendant and plaintiff entered into a 30-year contractual relationship whereby plaintiff provided defendant with a $114,750 loan secured by a mortgage on defendant's Florida property. During the loan process, defendant signed multiple documents indentifying plaintiff as a Michigan business, so at a minimum he had constructive knowledge that he was not simply doing business with a Florida entity. Further, the promissory note expressly stated that the loan payments were to be remitted to plaintiff's principal place of business in Birmingham, Michigan. Although defendant eventually finalized the loan documents outside of Michigan, we find that his actions were sufficient to meet the test for transacting any business within the state. See MCL 600.705(1); *Oberlies*, 246 Mich App at 430.

## B. DUE PROCESS

Because the "transaction of any business" test is "extraordinarily easy to meet[,]" "[t]he only real limitation placed on this [long arm] statute is the due process clause." *Id.* (citation and quotation omitted; alteration in original). Concerning due process, *Int'l Shoe Co v Washington*, 326 US 310, 316; 66 S Ct 154; 90 L Ed 95 (1945), instructs that in order to subject a defendant to personal jurisdiction, the defendant must "have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."

(Citation and quotation marks omitted.) "Courts employ a three-part test to determine whether a defendant has 'minimum contacts' with Michigan to the extent that limited personal jurisdiction may be exercised in accordance with due process." *Oberlies*, 246 Mich App at 433.

> First, the defendant must have purposefully availed himself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws. Second, the cause of action must arise from the defendant's activities in the state. Third, the defendant's activities must be substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable. [*Jeffrey*, 448 Mich at 186 (citation and quotation omitted).]

" '[P]urposeful availment' is something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan . . . ." *Aaronson v Lindsay & Hauer Int'l Ltd*, 235 Mich App 259, 265; 597 NW2d 227 (1999) (citation and quotation omitted; alteration in original). The "requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* (citation and quotation marks omitted). This inquiry focuses on the defendant's actions directed toward the forum state. *Walden v Fiore*, __ US __; 134 S Ct 1115, 1122; 188 L Ed 2d 12 (2014). Courts have rejected "any talismanic jurisdictional formulas" and evaluate the facts of each case. *Burger King Corp v Rudzewicz*, 471 US 462, 485-486; 105 S Ct 2174; 85 L Ed 2d 528 (1985). For instance, a defendant's decision to enter into an agreement with a plaintiff from the forum state is not, by itself, sufficient to establish that the defendant purposefully availed himself of the protections of the forum state. *Id.* at 478. Rather, jurisdiction is appropriate where defendants "purposefully 'reach[ed] out beyond' their State and into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State[.]" *Walden*, 134 S Ct at 1122, quoting *Burger King Corp*, 471 US at 479-480. Where the defendant was a mere "passive party" and there is no evidence that he or she was involved in negotiating the terms of the agreement, this Court has declined to find that the defendant purposefully availed himself or herself of an opportunity in Michigan. See *Norwood Indus, Inc v Grand Blanc Printing, Inc*, 219 Mich App 590, 593; 556 NW2d 897 (1996).

The facts in this case present a close call, but we find that defendant did not purposefully avail himself of the benefits and protections of Michigan law. In reaching this conclusion, we acknowledge that, pursuant to Welty's affidavit, defendant initiated contact with plaintiff by completing and submitting a loan application. However, we note that beyond submitting the application, defendant's involvement in this case was rather passive and that his contact with Michigan was limited. For instance, plaintiff has not alleged, much less submitted documentary evidence, that defendant engaged in any negotiations or undertook any action beyond merely submitting the application document. Plaintiff directs our attention to the work that *plaintiff* undertook in Michigan after defendant submitted the application, but plaintiff's activities in the forum state are not pertinent to our analysis. See *Walden*, 134 S Ct at 1122. Rather, our concern is with defendant's activities. *Id.* Where those activities were limited, we find that defendant is more akin to a passive party, rather than a party who actively participated in negotiations. See *Norwood Indus, Inc*, 219 Mich App at 593-594 (explaining that a passive party who merely places an order with the plaintiff in the forum state and thereafter has no involvement has not

-4-

purposefully availed himself of the forum state). See also *Lazzaro v Charlevoix Lakes*, 108 Mich App 120, 128; 310 NW2d 295 (1981) (finding that certain defendants lacked the requisite minimum contacts with Michigan when those defendants were merely passively involved in the signing of the agreement at issue).

We also find that, on the facts presented, the transaction at issue was not the type of continuing, wide-reaching contact that constitutes a purposeful availment. Cf. *Burger King Corp*, 471 US at 479-480. Although defendant entered into a 30-year mortgage that anticipated monthly payments, the continued mailing of payments to the forum state does not, without more, necessarily show purposeful availment. See *Labry v Whitney Nat'l Bank*, 8 So3d 1239, 1241 (Fl App, 2009) (citation and quotation omitted) ("Signing a promissory obligation, in and of itself, is insufficient contact to confer personal jurisdiction.").[1] See also *Freudensprung v Offshore Technical Servs, Inc*, 379 F3d 327, 344 (CA 5, 2004); *Ganiko v Ganiko*, 826 So 2d 391, 395 (Fl App, 2002); *Federated Rural Elec Ins Corp v Inland Power & Light Co*, 18 F3d 389, 395 (CA 7, 1994). The record reveals that defendant's chief obligation was to make monthly payments to plaintiff. As such, we distinguish the instant matter from cases where far-reaching, continuing obligations existed. Cf. *Burger King Corp*, 471 US at 480 (finding purposeful availment where the contract at issue anticipated a "long-term and exacting regulation" of the defendant's business). Instead, we find that this case is more comparable to a " 'one-shot' transaction[,]" rather than purposeful availment. See *Kerry Steel, Inc v Paragon Indus, Inc*, 106 F3d 147, 151 (CA 6, 1997). Indeed, the mortgage agreement does not indicate that it was part of a larger business opportunity or that defendant intended to enter into a business opportunity beyond the purchase of a single property that was located outside of Michigan. See *id.* (finding that an agreement was not intended to have wide-reaching effects where it was a "one-shot" transaction and where the subject matter of the contract was not located in Michigan). Further, while not dispositive, the fact that defendant entered into the obligations in Florida, rather than in Michigan, and the fact that defendant's contractual obligations pertained to property located in Florida, can be considered in determining whether defendant purposefully availed himself of the benefits and protections of Michigan law. See *LAK, Inc v Deer Creek Enterprises*, 885 F2d 1293, 1300 (CA 6, 1989) ("The place where the contractual obligation was incurred is a factor that courts often deem important, although it cannot normally be determinative.").

In concluding that defendant did not purposefully invoke the benefits and protections of Michigan law, we cannot ignore the fact that the mortgage agreement at issue states that it is to be governed by Florida law. The mortgage states, in paragraph 16, that "[t]his Security Instrument shall be governed by federal law *and the law of the jurisdiction in which the property is located*." (Emphasis added). The mortgage recognizes that the property is located in Florida; thus, it states that it is to be governed by Florida law. In *Burger King Corp*, 471 US at 482, the United States Supreme Court explained that a choice-of-law provision, while not dispositive, can be considered in determining "whether a defendant has 'purposefully invoked the benefits and protections of a State's laws' for jurisdictional purposes." In *LAK, Inc*, 885 F2d at 1295, which

---

[1] Although decisions from other jurisdictions are not binding, we may consider them for their persuasive value. *Hiner v Mojica*, 271 Mich App 604, 612; 722 NW2d 914 (2006).

dealt with a one-time real estate transaction in Florida between the defendant, an Indiana partnership, and the plaintiff, a Michigan corporation, the parties' agreement contained a choice of law provision stating that the agreement was to be governed by Florida law. The Sixth Circuit concluded that this choice-of-law provision weighed against a finding that the plaintiff purposefully availed itself of Michigan law:

> A showing that [the defendant] purposefully availed itself of the benefits and protections of Michigan law is essential to the plaintiff's jurisdictional claim, as we shall see, *and this essential showing is not helped by the fact that the parties chose to have the contract governed by the law of Florida, rather than the law of Michigan.* [*Id.* (Emphasis added.)]

Where the parties had the option to choose the law of any jurisdiction, including Michigan, as the governing law for their agreement, the fact that they chose to govern their agreement under the law of Florida, particularly where, as is the case here, defendant's connection to Michigan is attenuated, at best, we find such a choice indicative of the conclusion that defendant did not purposefully avail himself of the benefits and protections of Michigan law. See *Municipal Mtg & Equity v Southfork Apartments Ltd Partnership*, 93 F Supp 2d 622, 629 (D Md, 2000) (explaining that, in conjunction with reasons similar to those noted above, that "the selection by the parties, and [the defendant] in particular, of Minnesota law over Maryland law, when the choice of Maryland law was clearly an available option, weighs heavily in favor of the conclusion that [the defendant] did not intend to avail itself of the benefits and protections of Maryland law.").

In light of the facts of this case, we find that defendant's actions were not enough to constitute purposeful availment of the benefits and protection of Michigan law.[2] As such, we need not look at the remaining factors in a due process analysis, as each criterion is an independent requirement. See *LAK, Inc*, 885 F2d at 1303. Accordingly, we affirm the result reached by the trial court, despite the fact that, unlike the trial court, we find that defendant's conducted amounted to the "transaction of any business" within Michigan. *Lavey v Mills*, 248 Mich App 244, 250; 639 NW2d 261 (2001) (citation and quotation omitted; alteration in original) ("[w]hen this Court concludes that a trial court has reached the correct result, this Court will affirm even if it does so under alternative reasoning."). In so concluding, we need not address plaintiff's assertion that the trial court abused its discretion by denying its motion for reconsideration because the trial court incorrectly interpreted and applied the phrase "transaction of any business" in MCL 600.705(1), as well as its assertion that plaintiff is bound by his mortgage broker's actions. Regardless of whether defendant or the broker contacted plaintiff, we

---

[2] In reaching this decision, we note that the property at issue was located outside of the jurisdiction, and note that, in cases where the property at issue is located inside the forum state, other courts have found that the defendant purposefully availed itself of the benefits and protections of the forum state. See, e.g., *Commerce Bank & Trust v Dworman*, 861 A2d 662, 664, 667 (Me, 2004); *Mellon Bank (East) PSFS, Nat'l Ass'n v Farino*, 960 F2d 1217, 1223 (CA 3, 1992); *Alameda Nat'l Bank v Kanchanapoom*, 752 F Supp 367, 369-370 (D Colo, 1990).

find that defendant's contacts with the forum state do not amount to a purposeful availment of the benefits and protections of Michigan law.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Michael J. Talbot
/s/ Jane M. Beckering