# STATE OF MICHIGAN

# COURT OF APPEALS

---

FIFTH THIRD MORTGAGE-MI, L.L.C., FIFTH THIRD MORTGAGE COMPANY, and FIFTH THIRD BANK,

        Plaintiffs/Counter-Defendants-
        Appellants,

v

FIRST AMERICAN TITLE INSURANCE COMPANY,

        Defendant-Appellee,

and

ROBERT M. HANCE, ANTHONY REED, ROCKRIDGE HOLDINGS, INC., TYRONE A. HOGAN, MATTHEW A. FLYNN, FLYNN FINANCIAL SERVICES, INC., ROBERT S. SHUMAKE, MEEK QUARTON, L.L.C., MEEK OVER LEA, L.C., JULIA GLASS, SCOTT P. LUCIA, MICHAEL BOSSENBERY, MERCEDES TURON, FELIPE RUIZ TURON, FLOYD ANDERSON III, STEPHANIE P. GLOVER, CHENZIRA MAPLES, DIRECT FINANCIAL SERVICES CORPORATION, and ALAN J. LUCIA,

        Defendants/Cross-Defendants,

and

STEPHANIE HANCE, EXECUTIVE ESTATE BUILDERS, L.L.C., RANJIT VERGHESE, INVESTMENT PROPERTY, L.L.C., NICOLETTI & ASSOCIATES, P.C., JAMES C. BOUDREAU, BOJAM PROPERTIES, INC., INHERITANCE AUTOMOTIVE GROUP, L.L.C., MICHAEL T. KAHN, TESSLER INVESTMENTS, L.L.C.,

UNPUBLISHED
March 10, 2015

No. 318037
Oakland Circuit Court
LC No. 2005-070592-CZ

-1-

THOMPSON FINANCIAL GROUP, STATE APPRAISALS, INC., PAMELA S. SIIRA, THE APPRAISAL PLACE, INC., NATHAN HOGAN, GREYHOUND APPRAISALS AND INVESTMENTS, L.L.C., CHRISTINE D. MAYS, C.J. APPRAISALS, LTD., TERRI GILLUM, ROBERT L. WALSTON, SHAMIL E. HALABU, SHAMIL E. HALABU, P.C., CLEAR TITLE AGENCY, INC., VISTAL LAND & HOME DEVELOPMENT, CYRUS DEVELOPMENT PROPERTIES, L.L.C., a/k/a CYRUS DEVELOPMENT, L.L.C., INTER-LAKES DEVELOPMENT CORPORATION, and LANDAMERICA TRANSNATION,

   Defendants,

and

CONTINENTAL TITLE INSURANCE AGENCY, INC., PAUL J. NICOLETTI, and MARY ANN NICOLETTI,

    Defendants/Third-Party
    Plaintiffs/Counter-Plaintiffs/Cross-
    Plaintiffs,

and

ROSELENE LANGHORNE,

    Defendant/Third-Party Defendant,

and

JACK RILEY, PAT FEHRING, PHIL COOPER, ANTHONY WEEKLY, BRUCE BAXTER, ELIZABETH HOLSBEKE, ROBIN VANDENBERG, CAROL CRAW, ANN MARIE ST. CLAIR, NEYSA FRENCH, KATHERINE ST. CHARLES, BRIAN LITWIN, and HEATHER MAIER,

    Third-Party Defendants.

_____

Before: SERVITO, P.J., and STEPHENS and M. J. KELLY, JJ.

PER CURIAM.

In this indemnification dispute, plaintiffs, Fifth Third Mortgage-MI, LLC (Fifth Third LLC), Fifth Third Mortgage Company and Fifth Third Bank (collectively the Fifth Third Entities), appeal by right the trial court's order granting the motion for summary disposition under MCR 2.116(C)(8) and (10) by defendant, First American Title Insurance Company, and denying their cross-motion for summary disposition under MCR 2.116(C)(10). We affirm in part, reverse in part, and remand for further proceedings.

## I. BASIC FACTS

In 2005, the Fifth Third Entities sued five defendants for damages arising from a scheme to defraud them by using "straw borrowers" to procure loans secured by residential mortgages for the purpose of acquiring and developing real property, and then defaulting on the loans. The Fifth Third Entities later amended their complaint to add numerous defendants, including First American. The Fifth Third Entities alleged that First American had a contractual obligation to indemnify them for losses sustained with regard to seven loans under the terms of a closing protection letter (the protection letter), which was addressed to Fifth Third Mortgage Company and dated November 17, 2005. The protection letter, which was issued by Continental Title Insurance Agency, Inc., provided that First American would indemnify Fifth Third Mortgage Company for losses, in relevant part, occasioned by an improper closing:

> When title insurance of First American Title Insurance Company is specified for your protection or the protection of a purchase from you in connection with closings of real estate transactions on land located in the state of Michigan in which you are to be the seller or purchaser of an interest in the land or a lender secured by a mortgage (including any other security instrument) of an interest in land, the Company, subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with such closings when conducted by the Issuing Agent (an Agent authorized to issue title insurance for the Company), referenced herein . . . .

The Fifth Third Entities dropped their claim for indemnification with respect to one loan, which was repaid, but continued to seek indemnification for losses associated with loans made to six borrowers: Mercedes Turin, Floyd Anderson, Roselene Langhorne, Stephanie Glover, Chenzira Maples, and Scott Lucia. The closings for those loans took place between May and October 2005. First American issued the protection letter after the closing for these loans. Continental Title handled each closing and each mortgage listed Fifth Third LLC as the lender and mortgagee.

-3-

In 2008, the trial court dismissed the Fifth Third Entities' indemnification claims after determining that the protection letter could not be applied retroactively. This Court, however, reversed that decision and remanded for further proceedings.[1]

On remand, First American again moved for summary disposition under MCR 2.116(C)(8) and (10). First American conceded for purposes of its motion that Continental Title, and Continental's principal, Paul Nicoletti, were active participants in the fraudulent scheme. Instead, First American argued that, under the undisputed facts, Fifth Third Mortgage Company was not entitled to indemnification. Specifically, it argued that Fifth Third Mortgage Company was not the mortgage holder and was not named as the insured under the title insurance for the loans at issue, as required under the protection letter. It further argued that the protection letter did not apply to Continental Title's alleged misconduct. First American also sought to bar the indemnification claim on the basis of the Firth Third Entities' receipt of deeds in lieu of foreclosure for the properties at issue, or to reduce any amount that it owed on the ground that Fifth Third Mortgage Company impaired its subrogation rights. The Fifth Third Entities also moved for summary disposition under MCR 2.116(C)(10).

The trial court determined that the protection letter did not apply under the undisputed facts and, for that reason, granted First American's motion and denied the Fifth Third Entities' motion. After the trial court denied their motion for reconsideration, the Fifth Third Entities appealed in this Court.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court also reviews de novo the proper interpretation and application of a contract for indemnification. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 172; 848 NW2d 95 (2014). This Court similarly reviews de novo the proper application of an equitable doctrine, such as estoppel. *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 444; 761 NW2d 846 (2008). We review a trial court's decision on a motion for reconsideration for an abuse of discretion. *Yoost v Caspari*, 295 Mich App 209, 219; 813 NW2d 783 (2012).

In this case, it is evident that the trial court considered the parties' evidentiary submissions in deciding the motions. Therefore, we shall review its decision under the standards applicable to a motion under MCR 2.116(C)(10). See *Hughes v Region VII Area Agency on Aging*, 277 Mich App 268, 273; 744 NW2d 10 (2007).

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Lear Corp v Dep't of Treasury*, 299 Mich App 533, 536; 831 NW2d 255 (2013). The moving party has the initial burden of presenting affidavits, depositions, admissions, or other documentary evidence in support of its position. *Barnard Mfg*, 285 Mich App at 369-370. If the moving party

---

[1] *Fifth Third Mortgage-MI, LLC v Hance,* unpublished opinion per curiam of the Court of Appeals, issued September 29, 2011 (Docket Nos. 294633 and 294698).

properly supports its motion, the burden shifts to the nonmoving party to present evidence showing that a genuine issue of material fact exists. *Id.* at 374. " 'A genuine issue of material fact exists when, viewing the evidence in a light most favorable to the nonmoving party, the record which might be developed . . . would leave open an issue upon which reasonable minds might differ.' " *Bonner v City of Brighton*, 495 Mich 209, 220; 848 NW2d 380 (2014), quoting *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013).

## III. INDEMNITEE UNDER THE PROTECTION LETTER

The Fifth Third Entities first argue that the trial court erred when it determined that Fifth Third Mortgage Company was not entitled to indemnification under the terms of the protection letter. They maintain there was at least an issue of fact regarding whether Fifth Third Mortgage Company could satisfy the requirements.

A closing protection letter, such as the one at issue, is an indemnification agreement that provides protection for risks other than that provided under a title insurance policy. *JPMorgan Chase Bank, NA v First American Title Ins Co*, 750 F3d 573, 579 (CA 6, 2014). A title insurance policy insures that the title for the property is not subject to unknown encumbrances. *Id.* A closing protection letter, by contrast, is issued by the title insurance underwriter to verify its agent's authority to issue title insurance and to indemnify the purchaser for its agent's errors or dishonesty. *New Freedom Mtg Corp v Globe Mtg Corp*, 281 Mich App 63, 80; 761 NW2d 832 (2008). Although the consideration for the closing protection letter is the purchase of the underlying title insurance policy, the protection letter can support a breach of contract claim independent of the title insurance policy. *Id.*

As with any contract, the primary goal in construing an indemnification agreement is to give effect to the parties' intent. *Miller-Davis Co*, 495 Mich at 174. The parties' intent is determined by examining the contractual language according to its plain and ordinary meaning. *Id.* The applicability of an indemnification clause is determined by making a straightforward analysis of the facts and contract terms. *Id.* If contractual language is unambiguous, it must be enforced as written. *Badiee v Brighton Area Sch*, 265 Mich App 343, 351; 695 NW2d 521 (2005). If the language is ambiguous, summary disposition is inappropriate because factual development is necessary to determine the parties' intent. *SSC Assoc Ltd Partnership v Gen Retirement Sys*, 192 Mich App 360, 363; 480 NW2d 275 (1991). A contract is ambiguous when two provisions irreconcilably conflict or a term is equally susceptible to more than one meaning. *Holland v Trinity Health Care Corp*, 287 Mich App 524, 527; 791 NW2d 724 (2010).

The protection letter at issue contains two dependent clauses. The first dependent clause states that the named indemnitee is entitled to protection when "title insurance of First American Title Insurance Company is specified for your protection or the protection of a purchase from you in connection with closings of real estate transactions on land located in the state of Michigan . . . ."

In its motion for summary disposition, First American argued—almost as an afterthought—that Fifth Third Mortgage Company could not establish a claim for indemnification under this clause because it was not named under the title insurance policies for the closings at issue. It did not, however, cite any record evidence for this proposition and there

is no indication in the record that the trial court properly considered other evidence to establish this fact. See *Barnard Mfg*, 285 Mich App at 380-381, 380 n 8. Because it failed to properly support its motion with evidence tending to show that Fifth Third Mortgage Company was not insured under the title insurance policies, the Fifth Third Entities had no obligation to present evidence to establish a question of fact on this issue and the trial court should have denied First America's motion to the extent that it relied on this argument. *Id.* at 370 ("If the moving party fails to properly support its motion for summary disposition, the nonmoving party has no duty to respond and the trial court should deny the motion.").

The Fifth Third Entities did submit the title insurance documents on appeal, but we cannot discern whether those documents were submitted to the trial court on the original motions for summary disposition. This Court's review of a motion for summary disposition is limited to review of the arguments and evidence actually presented to the trial court. *Id.* at 380-381. Therefore, because there is no indication that these documents were properly submitted to the trial court on the motions for summary disposition, we decline to consider them. See *Amorello v Monsanto Corp*, 186 Mich App 324, 330; 463 NW2d 487 (1990). Nevertheless, as the Fifth Third Entities point out on appeal, the term "insured" in the policy is not limited to the named insured, but rather may include the owner of the indebtedness secured by the insured mortgage and each successor. See, e.g., *Prime Fin Servs, LLC v Vinton*, 279 Mich App 245, 256-257; 761 NW2d 694 (2008) (explaining that a note is personal property that may be transferred or pledged to third parties). Because First American has apparently conceded this point and it does not appear that there was record evidence to support the trial court's determination regarding who was insured under the title insurance policies, we conclude that the trial court erred in its application of MCR 2.116(C)(10) to this factual issue.

Under the circumstances of this case, however, we reject the Fifth Third Entities' argument that First American's apparent concession on appeal should be dispositive of whether Fifth Third Mortgage Company was insured under the title policies. Whether the undisputed evidence established that Fifth Third Mortgage Company was an insured within the meaning of the title insurance policies at issue should be decided in the first instance by the trial court after a properly supported motion for summary disposition. Because the Fifth Third Entities did not establish that the title insurance was specified for Fifth Third Mortgage Company's protection before the trial court on their cross-motion, they necessarily failed to establish that they were entitled to summary disposition in their favor. MCR 2.116(C)(10).

The Fifth Third Entities also argue that the trial court erred to the extent that it determined that the protection letter did not apply because Fifth Third Mortgage Company was not a lender secured by a mortgage on the real property at issue. Specifically, the Fifth Third Entities argue that the automatic assignment agreement between Fifth Third LLC and Fifth Third Mortgage Company established, at the very least, a question of fact as to whether Fifth Third Mortgage Company was a lender secured by the relevant mortgages.

Where a consumer executes a promissory note and a mortgage in favor of a party, that party generally owns the promissory note as personal property. *Prime Fin Servs*, 279 Mich App at 256-257. The mortgage itself is a lien on real property intended to secure payment of the obligation. *Id.* at 257. Although a mortgage and promissory note are construed together, the choice of a mortgagee is a matter of convenience. *Residential Funding Co, LLC v Saurman*, 490

Mich 909; 805 NW2d 183 (2011). Therefore, a record-holder of a mortgage may acquire an interest in the indebtedness through ownership of the legal title to the security lien, even though the beneficial interest of the mortgage rests with another party. *Id.* at 910.

The record reflects that the promissory notes were first presented to the trial court by First American in opposition to the Fifth Third Entities' motion for reconsideration, and not as documentary evidence to support the motions for summary disposition. But the identity of Fifth Third LLC as the lender in the promissory notes was consistent with the evidence, including the mortgages themselves, that was previously submitted to the trial court for purposes of deciding the motions for summary disposition. We are not persuaded that the evidence, which the Fifth Third Entities first offered in support of their motion for reconsideration, including certain construction loan agreements that referred to Fifth Third Mortgage Company as the lender and a construction loan note addendum that designated Fifth Third Mortgage Company as a mere recipient for payment, established a genuine issue of material fact sufficient to demonstrate that the trial court abused its discretion by denying the motion for reconsideration.

Turning to the assignment agreement between Fifth Third LLC and Fifth Third Mortgage Company, the trial court considered this argument in its summary disposition ruling and determined that the parties may have intended to assign the mortgages from Fifth Third LLC to Fifth Third Mortgage Company, but that there was no evidence that the assignment ever occurred. We conclude that there is an issue of fact as to whether the assignments occurred.

The assignment agreement, which was dated October 22, 2001, provides that it is governed by Ohio law. Under either Michigan or Ohio law, the general rule is that an assignee stands in the shoes of the assignor. See *Ford Motor Credit Co v Ryan*, 189 Ohio App 3d 560, 598; 939 NE2d 891 (2010); *First of America Bank v Thompson*, 217 Mich App 581, 587; 552 NW2d 516 (1996). The assignment agreement provided that Fifth Third LLC, as the seller, assigned to Fifth Third Mortgage Company, as the buyer, its existing notes and mortgages. The agreement also provided that Fifth Third LLC assigned any future notes and mortgages that it subsequently made:

> Buyer agrees to purchase and Seller agrees to and does herby sell without recourse, assign and transfer to Buyer all of Seller's right, title and interest in and to all loans that close in the name of the Seller subsequent to the date hereof, so that immediately upon the closing of each such loan the ownership of the Loan Documents evidencing same shall be irrevocably deemed to be held by Buyer and not Seller.

On the basis of this agreement, Fifth Third Mortgage Company stood in the shoes of Fifth Third LLC with respect to both the indebtedness and the mortgage immediately upon the closing of future loan transactions. Because the assignment agreement did not require any special steps for the assignment to take effect, the trial court erred when it determined that there was no evidence that an assignments actually occurred. Nonetheless, parties may mutually assent to modify their agreements. See *Hanly v Riverside Methodist Hosp*, 78 Ohio App 3d 73, 79; 603 NE2d 1126 (1991); *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 370-371; 666 NW2d 251 (2003). And, considering that there was evidence to support an inference that Fifth Third Mortgage Company was not functioning as an assignee, including the mortgage

-7-

discharges executed by Fifth Third LLC for the loan transactions after this case began, we conclude that there is a genuine issue of material fact regarding whether the October 22, 2001 agreement was in effect at the relevant times.

We also reject the Fifth Third Entities' argument that First American lacks standing to challenge the existence or effect of the assignment agreement. Although a third-party to an assignment generally does not have standing to challenge the assignment, see *Bowles v Oakman*, 246 Mich 674, 678; 225 NW 613 (1929), there are limited circumstances where a debtor may challenge an assignment, such as to avoid having to pay the same debt twice. See 6A CJS Assignments § 132, pp 524–525 (2013). Accordingly, a third party may challenge an assignment on the ground that it absolutely invalid, ineffective, or void. *Conlin v Mtg Electronic Registration Sys, Inc*, 714 F3d 355, 361 (CA 6, 2013). Because of the nature of the dispute, we conclude that First American has standing to contest the validity of the assignment. *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010).

The trial court erred to the extent that it determined that Fifth Third Mortgage Company was not an insured within the meaning of the title insurance policies at issue because the parties failed to properly address that issue in their motions for summary disposition. The trial court also erred when it granted summary disposition in First America's favor on the ground that the Fifth Third Entities failed to establish a question of fact as to whether Fifth Third Mortgage Company was a lender secured by the relevant mortgages. The Fifth Third Entities presented evidence sufficient to establish a question of fact as to whether Fifth Third LLC assigned the notes and mortgages at issue to Fifth Third Mortgage Company.

## IV. LIABILITY UNDER THE PROTECTION LETTER

The Fifth Third Entities also argue that the trial court erred in determining that there was no factual basis for liability under ¶¶ (1)(b) and (2) of the protection letter. For purposes of our review, we shall assume that Fifth Third Mortgage Company is entitled to seek indemnification under the protection letter, which identifies Continental Title as the issuing agent.[2]

Paragraph 1(b) provides for indemnification where the losses arise from the insuring agent's failure to comply with "your written instructions to the extent that they relate to . . . the obtaining of any other document, specifically required by you, but not to the extent that said instruments require a determination of the validity, enforceability or effectiveness of such other document."[3] Under the "closing documents" section of its written instructions for the loan

---

[2] Although the Fifth Third Entities' argument focuses on the actions of Paul Nicoletti, it is apparent that Continental Title is the insuring agent. Nicoletti's actions are, nevertheless, relevant because Continental Title acted through its officers and agents. *Barclae v Zarb*, 300 Mich App 455, 472; 834 NW2d 100 (2013).

[3] Although First American points out that the closing instructions are addressed to Continental Title from "Fifth Third Mortgage" and not "Fifth Third Mortgage Company," factual development would be necessary to determine the identity of this entity. Because neither party has shown that this issue was presented to the trial court or that it could be resolved as a matter

-8-

transactions, Continental Title was "responsible for ensuring that all closing documents are properly executed and acknowledged." The instructions also required Continental Title to certify that it complied with the instructions and provided that "[a]ll executed documents, conditions required at closing or other documents required at closing must be returned as part of the closed loan package."

Having considered the list of closing package documents sent to Fifth Third Bank, the HUD-1 settlement statement, the borrower's statement, and the affidavit of occupancy for the loan transaction involving borrower Lucia, we conclude that the Fifth Third Entities failed to establish any error in the trial court's determination that the requirements for liability were not established. The list of closing package documents sent to Fifth Third Bank does not impose any closing requirements on Continental Title. Further, a HUD-1 settlement statement is basically a comprehensive list of incoming and outgoing funds upon closing of a mortgage transaction. *United States v Woods*, 554 F3d 611, 612 n 3 (CA 6, 2009). There is no evidence that it was specifically required by Fifth Third Mortgage Company. Even if the list of closing package documents supports an inference that listed documents, including the HUD-1 settlement statement, were required, Lucia attested to the accuracy of the HUD-1 settlement statement, not Continental Title. And even if Continental Title had a role in preparing inaccurate information in the HUD-1 settlement statement, as claimed by the Fifth Third Entities, the protection letter does not provide for indemnification to the extent that the written closing instructions "require a determination of the validity, enforceability or effectiveness" of the document. This exception applies to inaccurate HUD-1 settlement statements. *New Freedom Mtg Corp*, 281 Mich App at 82. Therefore, the trial court correctly determined that the HUD-1 settlement statements did not trigger liability under the protection letter.

Although the trial court did not address the borrower's statement and affidavit of occupancy, the borrower's statement indicates that it was approved by Lucia. Also, the affidavit of occupancy indicates that it was signed by Lucia, with Nicoletti acting as the notary. There is no evidence that Continental Title was instructed that its agent must serve as the notary. Further, Nicoletti's role as the notary would not include attesting to the accuracy of the affidavit. See *Sherry v E Suburban Football League*, 292 Mich App 23, 31; 807 NW2d 859 (2011). In any event, considering that the gravamen of the Fifth Third Entities' claim concerning these documents, like the HUD-1 settlement statement, is that they are inaccurate, they fall within the exception in ¶ 1(b) for determinations of the validity, enforceability, or effectiveness of the document. Thus, there is no basis for disturbing the trial court's determination that ¶ 1(b) does not apply.

With respect to ¶ 2 of the protection letter, we conclude that the trial court erred when it determined that there was no factual support for the Fifth Third Entities' claim. This provision establishes liability for losses arising out of "[f]raud or dishonesty of the Issuing Agent handling your funds or documents in connection with such closings." The phrase "handling your funds or documents" modifies the phrase limiting the conduct that will give rise to liability: fraud or dishonesty by the issuing agent. The phrase does not, however, limit the nature of the fraud or

---

of law, we shall assume for purposes of our review that the closing instructions were Fifth Third Mortgage Company's instructions.

dishonesty that can give rise to liability, such as fraud *in handling* funds or documents, compare *New Freedom*, 281 Mich App at 83 (noting that the clause at issue referred to fraud or dishonesty *in handling* the funds or documents as opposed to fraud or dishonesty by the agent "handling" the funds or documents), but limits whose fraud or dishonesty can give rise to liability. Consequently, any fraud or dishonesty by the issuing agent who handles "your funds or documents" will give rise to liability as long as the issuing agent handles the funds or documents in "connection with" the closing. It is, nevertheless, apparent that any liability under the protection letter must be predicated on an association between actual losses incurred by Fifth Third Mortgage Company and the closings on the real estate transactions conducted by Continental Title. A lender suffers a loss where it does not receive what it bargained for, which could include "a bona fide mortgagor with the financial capacity to make the mortgage payments; a first lien on the property subject to foreclosure, if necessary; and the right to seek recovery of a deficiency after foreclosure from the mortgagor." *First American Title Ins Co v Vision Mtg Corp, Inc*, 298 N J Super 138, 143-144; 689 A2d 154 (1997).

In this case, First American conceded for purposes of its motion for summary disposition that Continental Title, through Nicoletti, actively participated in the fraudulent scheme pertaining to the loan transactions.[4] Given this concession, there is merit to the Fifth Third Entities' argument that the trial court erred in granting First American's motion for summary disposition. An issuing agent may fraudulently or dishonestly handle a lender's funds, even when there are no technical shortages of funds or unpaid lienholders at closing. Where an issuing agent possesses knowledge of, or is actively involved in, a fraudulent scheme involving the handling of the lender's funds or falsities in loan documents, liability may be predicated on ¶ 2 of the protection letter.

In sum, we affirm the trial court's determination that there was no liability under ¶ 1(b) of the protection letter, but reverse its determination that ¶ 2 of the protection letter does not apply to Fifth Third Mortgage Company's claimed losses. Consequently, the trial court erred when it granted summary disposition under MCR 2.116(C)(10) on the grounds that the activities at issue could not trigger liability under ¶ 2 of the protection letter.

## V. SUBROGATION

Lastly, the Fifth Third entities argue the trial court erred in determining that settlements reached in this case with respect to the six loan transactions precluded any liability under the protection letter. The protection letter contained the following subrogation clause:

---

[4] Although First American challenges the factual basis for the Fifth Third Entities' claim that Continental Title had an active role in disbursing escrowed loan funds to use as the down payment for the loans, First American first raised this issue in response to their motion for reconsideration. We have held First American to its concession for purposes of reviewing the trial court's s ruling. But, on the basis of our review of evidence regarding borrowers Lucia, Glover, and Maples, we reject First American's argument that the evidence does not support an inference that escrowed loan funds were used to fund the down payments.

[w]hen the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such rights of subrogation.

The trial court determined that the Fifth Third Entities' acceptance of deeds in lieu of foreclosure and full releases impaired First American's subrogation rights. Because First American's liability to Fifth Third Mortgage Company has not yet been determined, we shall limit our review to whether there is any basis to reduce liability. As set forth in the subrogation provision, this requires proof that Fifth Third Mortgage Company knowingly and voluntarily impaired the value of First American's subrogation rights.

We reject First American's argument that the "full credit bid" rule is relevant to whether the value of its subrogation rights were impaired. Under this rule, when a lender acquires property at a foreclosure sale by making a full credit bid, that is, a bid equal to the unpaid principal and interest on the mortgage plus foreclosure costs, the mortgage debt is satisfied. *New Freedom Mtg Corp*, 281 Mich App at 68. Consequently, the lender has no recoverable damages under a closing protection letter. *Id.* at 69-70, 75-76. In this case, the amount of Fifth Third Mortgage Company's damages has not yet been determined, but the protection letter requires proof of the actual loss incurred in connection with the closings conducted by Continental Title, as the issuing agent. In addition, there was no evidence of any foreclosure sales, but rather five deeds in lieu of foreclosure naming Fifth Third LLC as the grantee, which were executed by a borrower or other defendants, and one deed in lieu of foreclosure naming Fifth Third Bank as the grantee, which was executed by borrower Langhorne.

It is common for a mortgagee to take a conveyance in full or partial satisfaction of the mortgage obligation and as a substitution for foreclosure. Restatement Property, 3d, Mortgages, § 8.5, comment *b*. But a deed in lieu of foreclosure may also be intended as an additional security for a mortgage obligation. *Id.* The fundamental inquiry in construing a deed is to determine the parties' intent. *Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 370; 699 NW2d 272 (2005). Therefore, the mere fact that deeds in lieu of foreclosure were executed in connection with each of the six loan transactions does not establish that the mortgage debt was satisfied, let alone that Fifth Third Mortgage Company knowingly and voluntarily impaired the value of First American's subrogation rights.

Nonetheless, the Fifth Third Entities do not challenge the trial court's determination that Turon, Langhorne, and Lucia where fully released from liability, but only whether there was evidence that Maples, Glover, and Anderson were fully released from liability. Each deed in lieu of foreclosure was executed by an entity in which defendant Robert Shumake was a managing member. Although each deed specified that the grantor was waiving all right to title and the right of redemption from a foreclosure of the mortgage, the deeds do not extinguish any debt. Rather, the April 14, 2008 mutual release and settlement agreement that was entered into by all three Fifth Third Entities, and several defendants, governs the terms of their release.

Under ¶ 1 of the mutual release and settlement agreement, Shumake was required to pay $200,000 immediately and $550,000 by August 1, 2009. Paragraph 2 provides for entry of a consent judgment against Shumake in the amount of $1 million if Shumake fails to timely make the $550,000 payment. Paragraph 6 contains a broad mutual release that, in part, is conditioned on "payment in full by Shumake in the amounts set forth above." Considering the consent judgment entered in August 2009, which the Fifth Third Entities filed with their reply to First American's response to their motion for summary disposition, we conclude that the trial court erred in determining that the releases impaired First American's subrogation rights with respect to Glover, Maples and Anderson. The evidence, viewed in a light most favorable to the Fifth Third Entities, indicates that a condition for the full release of Glover, Maples, and Anderson was not satisfied. Therefore, we modify the trial court's decision to reflect that First American was only entitled to partial summary disposition under MCR 2.116(C)(10) with respect to its impaired-subrogation claim, because a genuine issue of material fact exists with respect to those three borrowers.

We also disagree with the Fifth Third Entities' argument that they established that First American waived or should be estopped from enforcing the impaired-subrogation provision with respect to all six loan transactions. Under Michigan law, a valid waiver consists of an intentional relinquishment of a known right. *Sweebe v Sweebe*, 474 Mich 151, 156-157; 712 NW2d 708 (2006). "[A] waiver may be shown by express declarations or by declarations that manifest the parties' intent and purpose." *Id.* at 157. Contracting parties are free to design their own guidelines to waive contractual rights, but even absent such a provision, a waiver may be established by clear and convincing evidence that the parties mutually agreed to the waiver. *Quality Prod & Concepts Co*, 469 Mich at 372.

In this case, the Fifth Third Entities failed to present evidence to support a waiver. Substantively, their claim rests on the doctrine of equitable estoppel, but there is no factual support for applying this doctrine. The doctrine of equitable estoppel may assist a party in a lawsuit by precluding the opposing party from asserting or denying the existence of a particular fact. *Lakeside Oakland Dev, LC v H & J Beef Co*, 249 Mich App 517, 527; 644 NW2d 765 (2002). It may also prevent a contracting party from enforcing a specific provision in a contract. *City of Grosse Pointe Park v Mich Muni Liability & Prop Pool*, 473 Mich 188, 204-205; 702 NW2d 106 (2005) (opinion by CAVANAGH, J.) Equitable estoppel arises "where (1) a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party is prejudiced if the first party is allowed to deny the existence of those facts." *Conagra, Inc v Farmers State Bank*, 237 Mich App 109, 141; 602 NW2d 390 (1999).

Because there has not yet been any determination that First American breached the protection letter, and there are genuine issues of material fact regarding First American's liability to Fifth Third Mortgage Company, we reject the argument that First American's denial of liability supports the application of estoppel. The more important factor is First American's knowledge. See *Flanary v Reserve Ins Co*, 364 Mich 73, 74-77; 110 NW2d 670 (1961). And while the evidence presented to the trial court indicates that First American knew about the litigation involving the borrowers, the Fifth Third Entities have not established any error in the trial court's determination that First American knew whether the borrowers would be fully released from liability.

In a letter dated December 1, 2005, Fifth Third LLC's lawyer indicated to First American that Fifth Third LLC had concluded that Continental Title was involved in fraudulent activity and that it would be seeking indemnification under the protection letter. The lawyer also stated that Fifth Third LLC intended to mitigate its losses through foreclosures or deeds in lieu of foreclosure, but provided no notice that it or any other entity would fully release the borrowers from liability. Standing alone, the letter is insufficient to raise a genuine issue of material fact regarding whether First American should be estopped from enforcing the subrogation provision of the protection letter. We are further unpersuaded that the Fifth Third Entities' intent to mitigate damages would otherwise provide a basis for estoppel. The failure to mitigate damages is an affirmative defense to a contract action. *Fothergill v McKay Press*, 374 Mich 138, 140; 132 NW2d 144 (1965). And the issue here does not involve such a defense.

In sum, the Fifth Third Entities failed to factually support their claim that First American should be estopped from enforcing the impaired-subrogation provision of the protection letter. Although there has not yet been any determination of the amount of reimbursement, if any, that would be subject to a reduction for Fifth Third Mortgage Company's impairment of the value of First American's subrogation rights, we modify the trial court's determination that First American's subrogation rights were impaired with respect to the loan transactions involving all six borrowers. Because the Fifth Third Entities established a genuine issue of material fact regarding whether the payment condition for the release of borrowers Glover, Maples, and Anderson was satisfied, the trial court erred in granting summary disposition under MCR 2.116(C)(10) with respect to this issue.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. None of the parties having prevailed in full, we order that none may tax costs. MCR 7.219(A).

/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Michael J. Kelly