# STATE OF MICHIGAN

# COURT OF APPEALS

KIRK SCOTT PEDERSEN,

Plaintiff-Appellee,

v

MEIJER STORES, INC.,

Defendant-Appellant,

and

MACTEC, INC., MACTEC ENGINEERING & CONSULTING, INC., AMEC E&I, INC., AMEC E&I HOLDINGS, INC., AMEC ENVIRONMENT & INFRASTRUCTURE, INC., JARDER OUTDOOR NINGBO COMPANY, LTD., NINGBO TEXTILES IMPORT & EXPORT CORPORATION, NINGBO TEXTILES, HAIJIN METAL PRODUCTS, LTD., QIAN JUN, SINOCHEM GROUP, SINOCHEM CORPORATION, SINOCHEM, SINOCHEM NINGBO COMPANY, LTD., and SINOCHEM INTERNATIONAL,

Defendants.

UNPUBLISHED
August 3, 2017

No. 328855
Wayne Circuit Court
LC No. 11-012843-NO

KIRK SCOTT PEDERSEN,

Plaintiff-Appellee,

v

MEIJER STORES, INC., MACTEC, INC., MACTEC ENGINEERING & CONSULTING, INC., AMEC E&I, INC., AMEC E&I HOLDINGS, INC., AMEC ENVIRONMENT & INFRASTRUCTURE, INC., JARDER OUTDOOR NINGBO COMPANY, LTD., NINGBO

No. 328984
Wayne Circuit Court
LC No. 11-012843-NO

-1-

TEXTILES IMPORT & EXPORT CORPORATION, NINGBO TEXTILES, HAIJIN METAL PRODUCTS, LTD., QIAN JUN, SINOCHEM, SINOCHEM NINGBO COMPANY, LTD., and SINOCHEM INTERNATIONAL,

            Defendants,

and

SINOCHEM GROUP and SINOCHEM CORPORATION,

            Defendants-Appellants.

Before: STEPHENS, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

This product liability action arises out of injuries received by plaintiff, Kirk Pedersen, when the hunting tree stand he stepped onto collapsed and he fell approximately 20 feet to the ground below. In Docket No. 328855, the alleged seller of the Hunter's View tree stand, Meijer Stores, Inc. ("Meijer"), appeals by leave granted the trial court's order that denied in part its motion for summary disposition pursuant to MCR 2.116(C)(8) and (10). In Docket No. 328984, defendants Sinochem Group and Sinochem Corporation (collectively "Sinochem"[1]), appeal by leave granted the trial court's order that denied its motion for summary disposition brought pursuant to MCR 2.116(C)(1) (lack of personal jurisdiction) and (7) (statute of limitations). For the reasons set forth below, we affirm the order denying Meijer's motion for summary disposition, but reverse the order denying the Sinochem defendants' motion and remand for entry of summary disposition in the favor of Sinochem Group and Sinochem Corporation based on lack of personal jurisdiction.

## I. BASIC FACTS AN PROCEDURAL HISTORY

In the late afternoon of October 28, 2008, then 38-year-old plaintiff, Kirk Pedersen, went out to bow hunt in the woods near his parents' home. Plaintiff was an avid deer hunter and had previously installed six tree stands in this wooded area that he frequently hunted. On the afternoon in question, plaintiff approached the Hunter's View, Ltd., tree stand where he intended

---

[1] Other Sinochem entities, as well as Jarder Outdoor Ningbo Company, Ltd., Ningbo Textiles Import & Export Corporation, Haijin Metal Products, Ltd., and Qian Jun, were also named as party-defendants in plaintiff's third-amended complaint. However, it does not appear that these entities were ever served.

to begin his hunt. Plaintiff had used this tree stand a number of times over the years, but this would be the first time he used the stand during the 2008 hunting season. Plaintiff climbed up the pegs previously inserted in the tree until he reached the level of the tree stand platform. When he then stepped onto the platform, the stand immediately collapsed and detached from the tree. Plaintiff fell 18 to 20 feet to the ground below. Plaintiff remained on the ground for six hours before he was eventually discovered by a neighbor. As a result of the fall, plaintiff was rendered a quadriplegic.

Plaintiff allegedly purchased the Hunter's View tree stand from a Meijer store near his home sometime in the early 2000s, likely in December after the hunting season ended. At the time, he purchased two identical stands. Plaintiff bought them on clearance. The tree stands were sold without their original packaging; they did not come with a box or instructions. The tree stands were fully assembled and the only thing on the product, other than a "Hunter's View, Ltd." label, was a price tag.

The Hunter's View tree stand was manufactured in China and was arguably the innovation of David Smith. David Smith testified that he was the founder of Hunter's View, Ltd., and that he incorporated the company in 1998. His development of the product and bringing it to market was fairly simple. David Smith purchased the tree stand model that was the highest seller in the United States and then sent it to a manufacturing company in China for reverse engineering. He then directed the company to manufacture the re-engineered Hunter's View version in China and ship them to the United States for distribution.

Plaintiff filed a product liability complaint in the Wayne Circuit Court on October 20, 2011, naming as defendants Meijer, Walmart Stores, and the "AMEC defendants," i.e., AMEC E&I, Inc., AMEC E&I Holdings, Inc., MACTEC, Inc., and MACTEC Engineering & Consulting.[2] On October 22, 2012, David Smith and his brother, Douglas Smith, were deposed. During these depositions, the Smiths alluded to the potential involvement of a Chinese company, "Sinochem," in the manufacturing of the Hunter's View tree stand. Based on this testimony, the AMEC defendants filed, on November 9, 2012, a Notice of Nonparty at Fault, in which they alleged that "Sinochem," Haijin Metal Products, Ltd., Ningbo Textile, and Qian Jun were responsible for the manufacturing and design of the tree stand. In response to the notice of nonparty at fault, plaintiff, on February 7, 2013, moved to amend his complaint to add these additional entities as party-defendants. In an order dated February 22, 2013, plaintiff was granted 14 days within which to amend his complaint to add as defendants, Sinochem, Haijin Metal Products, Ltd., Ningbo Textiles, and Qian Jun. Consistent with that order, plaintiff's third-amended complaint was filed on March 8, 2013.

Plaintiff's third-amended complaint alleged that the tree stand was not reasonably fit for its intended use because of defects in design and manufacture. The crucial defect was one that caused the bracket holding the chain to bend, and become dislodged allowing the tree stand to separate from the tree and fall to the ground. In Count I, entitled "Negligence/Cross

---

[2] In his original complaint, plaintiff alleged that the tree stand was sold to him by either Meijer or Walmart. Plaintiff later stipulated to dismiss the claims against Walmart.

Negligence/Breach of Warranties," plaintiff alleged, among other things, that Meijer owed him a duty to exercise reasonable care pursuant to MCL 600.2947(6). In Count III, plaintiff asserted claims of negligence, gross negligence, and breach of warranties against defendants, Sinochem Group, Sinochem Corporation, and the other allegedly related design and manufacturing defendants that were never actually served with the complaint. Plaintiff alleged that these defendants jointly designed, engineered, manufactured, and tested the tree stand and that the design was defective because the bracket lacked ductile strength, lacked a positive locking mechanism to hold the chain in place. He also asserted that the stand lacked adequate warnings and instructions.

Both Meijer and the Sinochem defendants moved for summary disposition. Meijer argued that plaintiff's theories of liability against it, a nonmanufacturing seller, were not viable under the product liability act, MCL 600.2945 *et seq.* Following a hearing, the trial court granted in part and denied in part Meijer's motion for summary disposition. The court agreed that Meijer could not be held liable under a theory of express warranty. The court also concluded that Meijer was not liable on any theory related to the failure to exercise reasonable care regarding any design defect. Consequently, summary disposition on the foregoing claims was granted. However, the court concluded that there was a question of fact regarding whether Meijer exercised reasonable care "limited to the assertion that the tree stand did not come with instructions or an on-product warning label." With respect to Meijer's motion brought under MCR 2.116(C)(8), the court denied the motion "with respect to the sufficiency of Plaintiff's allegation that Defendant Meijer, Inc. is liable as a nonmanufacturing seller under MCL 600.2947(6)(a) and (b), and with respect to Plaintiff's allegation that Meijer, Inc. is the nonmanufacturing seller of the tree stand at issue."

On January 31, 2014, the Sinochem defendants moved for summary disposition, arguing lack of personal jurisdiction, MCR 2.116(C)(1), and expiration of the statute of limitations, MCR 116(C)(7). The trial court denied the motion, concluding that a question of fact existed with respect to the Sinochem defendants' contact with the state of Michigan. The court also concluded that plaintiff's claims against the Sinochem defendants were not barred by the applicable statute of limitation.

## II. STANDARD OF REVIEW

This Court reviews a decision on a motion for summary disposition de novo. *Maiden v Rozwood,* 461 Mich 109, 118; 597 NW2d 817 (1999). Summary disposition is appropriate under MCR 2.116(C)(8) if "[t]he opposing party has failed to state a claim upon which relief can be granted." "When deciding a motion under (C)(8), this Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party." *Dalley v Dykema Gossett, PLLC*, 287 Mich App 296, 304-305; 788 NW2d 679 (2010). Summary disposition under MCR 2.116(C)(8) should only be granted when the claim "is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery." *Id.* at 305 (citation omitted).

When considering a motion under MCR 2.116(C)(10), a reviewing court must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. MCR 2.116(G)(5). "Summary

-4-

disposition is properly granted if the proffered evidence fails to establish a genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Klein v Highland Park Pelzer Auto Sys, Inc,* 306 Mich App 67, 75; 854 NW2d 521 (2014).

This Court reviews de novo the legal question whether a court possesses personal jurisdiction over a party. *Yoost v Caspari,* 295 Mich App 209, 219; 813 NW2d 783 (2012). This Court also reviews de novo whether an exercise of jurisdiction over a defendant is consistent with notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment. *Id*. "When reviewing a trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(1), the trial court and this Court consider the pleadings and documentary evidence submitted by the parties in the light most favorable to the nonmoving party." *Id*. at 221.

Under MCR 2.116(C)(7), summary disposition is appropriate when a claim is barred by the statute of limitations. "When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them." *Dextrom v Wexford Co,* 287 Mich App 406, 428; 789 NW2d 211 (2010). When the facts are undisputed, whether a cause of action is time barred by the applicable statute of limitation presents a question of law, which this Court reviews de novo. *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 386; 738 NW2d 664 (2007).

III. ANALYSIS

A. DOCKET NO. 32885

Although the trial court dismissed several of the claims against Meijer, specifically those related to breach of express warranties and design defects, it found viable the theory that Meijer failed to exercise reasonable care when it sold the subject tree stand without its original instructions or on-product warning labels. In this regard, the trial court found that there were genuine issues of material fact. Meijer argues that the trial court erred and that its ruling violates MCL 600.2947(6)(a). We disagree.

The liability of a non-manufacturing seller of a product is governed by MCL 600.2947(6). *Curry v Meijer, Inc*, 286 Mich App 586, 591; 780 NW2d 603 (2009). This statute provides:

> (6) In a product liability action, a seller other than a manufacturer is not liable for harm allegedly caused by the product unless either of the following is true:

> (a) *The seller failed to exercise reasonable care, including breach of any implied warranty, with respect to the product and that failure was a proximate cause of the person's injuries.*

> (b) The seller made an express warranty as to the product, the product failed to conform to the warranty, and the failure to conform to the warranty was a proximate cause of the person's harm. [Emphasis added.]

-5-

In *Curry*, this Court succinctly stated that these statutory provisions "clearly and unambiguously predicate product liability on a nonmanufacturing seller for harm allegedly caused by the product under only two scenarios: (a) where the seller fails to exercise reasonable care, or (b) where there is a breach of an express warranty." *Id.* at 592. Specifically, this Court held that § 2947(6)(a) requires a showing of fault. *Id*. at 594-595. This Court found that its interpretation was consistent with the statute's legislative history, specifically, Senate Legislative Analysis, SB 344, January 11, 1996, p 11, which provides:

> [MCL 600.2947(6)(a)] establishes a fault-based standard of liability for nonmanufacturing product sellers, by providing that a seller is not liable unless it failed to exercise reasonable care or a product failed to conform to an express warranty, and the failure was a proximate cause of the harm. By holding sellers responsible only for their own wrongdoing, the bill will eliminate unnecessary and burdensome legal costs and insurance premiums. Since manufacturers ultimately indemnify sellers for the harm caused by the manufacturers' own products, claims should be brought directly against them. In addition, placing liability on the party that is in the best position to prevent harm will encourage product safety. [*Curry*, 286 Mich App 595 n 4.]

In this case, the trial court held viable a theory of liability related to whether Meijer exercised reasonable care when it sold the tree stand without the instructions or on-product warning labels that the manufacturer intended to accompany the sale of the product.[3] This theory is consistent

---

[3] Douglas Smith, the one-time product manager and president of Hunter's View, Ltd., offered the following testimony regarding how the product was originally packaged by the manufacturer:

> *Q*. . . . Do you remember how that early model with the chain was packaged and sold to the customer at the retail level? I mean, did it come in a box? Did it come in a bag?

> *A*. Yeah. Yeah. It came in a cardboard box. The box was stapled and taped. The box had a glue-on label with the basic description of the stand, a picture of the stand. There was a fall arrest system included in the box. I suspect it's pretty much the same as what you would see today.

> *Q*. All right. And the box would say Hunter's View on it?

> *A*. Yes.

> *Q*. And made in China somewhere on the box?

> *A*. Yes.

> *Q*. But the Chinese manufacturer would not be identified on the box; is that true?

with MCL 600.2947(6)(a) because it is predicated on Meijer's own actions and wrongdoings. Moreover, it furthers the goal of the legislation, i.e., to place liability on the party that is in the best position to prevent the harm.

This theory is also consistent with other provisions of the product liability act. MCL 600.2948 provides:

> (1) Evidence is admissible in a product liability action that, before the death of the person or injury to the person or damage to property, pamphlets, booklets, labels, or other written warnings were provided that gave notice to foreseeable users of the material risk of injury, death, or damage connected with the foreseeable use of the product or provided instructions as to the foreseeable uses, applications, or limitations of the product that the defendant knew or should have known.

> (2) A defendant is not liable for failure to warn of a material risk that is or should be obvious to a reasonably prudent product user or a material risk that is or should be a matter of common knowledge to persons in the same or similar position as the person upon whose injury or death the claim is based in a product liability action.

> (3) In a product liability action brought against a manufacturer or seller for harm allegedly caused by a failure to provide adequate warnings or instructions, a manufacturer or seller is not liable unless the plaintiff proves that the manufacturer knew or should have known about the risk of harm based on the scientific, technical, or medical information reasonably available at the time the specific unit of the product left the control of the manufacturer.

> *(4) This section does not limit a manufacturer's or seller's duty to use reasonable care in relation to a product after the product has left the manufacturer's or seller's control.* [Emphasis added.]

The theory of liability does not impose a duty to warn on Meijer, but rather permits a jury to consider whether Meijer failed to exercise reasonable care when it sold an inherently dangerous product without the component materials that were included in the original package. This theory is contemplated by the provisions of MCL 600.2948(4).

---

*A.* That's true.

*Q. And was there a booklet or manual that came inside with it?*

*A. Yes. Inside of the box, there would have been a plastic poly bag. The poly bag would have included the instruction manual as well as the fall arrest system.*

Plaintiff testified that all he purchased from Meijer was an unboxed tree stand with a price tag.

Furthermore, the trial court properly found that a question of fact existed with respect to whether Meijer exercised reasonable care. According to the testimony of Douglas Smith, the product manager and one-time president of Hunter's View, Ltd., the product as originally produced in China came boxed. A label was glued onto the box with the basic description of the stand and a picture of the stand. A fall arrest system was included in the box, as well as an instruction manual. Further, affixed to the product itself was a warning label. Plaintiff testified that he bought the tree stand assembled, on clearance and that none of these components were present at the time of purchase. Regardless of the reason for this condition of the tree stand at the time of sale, a trier of fact could reasonably conclude that Meijer sold the product in an altered state for which it was responsible, and that its sale of the product without the instructions and warnings as originally included constituted a failure to exercise reasonable care. Thus, a question of fact existed in this regard that precluded summary disposition.

Ignoring the foregoing analysis, Meijer argues that the trial court effectively imposed on it, a non-manufacturing seller, a duty to warn in violation of MCL 600.2947(6)(a). Meijer asserts that it is essentially being asked "to decide whether a product must have a warning or should have instructions to be safe." Meijer further asserts that it is not qualified to make these decisions because it did not create the product and it "does not, and feasibly cannot, know of the scientific, technical or medical information regarding a product that it did not manufacture." Meijer contends that this will place a burden on a non-manufacturing seller that is only appropriate for the manufacturer or a manufacturing seller. Meijer's arguments are without merit. Meijer completely ignores the allegation that it sold an inherently dangerous product without the component materials *that were included in the original packaging of the product.* The theory of liability that the trial court left intact does not impose on Meijer a duty to warn or instruct where no warnings or instructions were supplied by the manufacturer. Instead, consistent with MCL 600.2947, the trier of fact will be asked to consider whether Meijer exercised reasonable care with respect to the product.

Meijer also argues that even if the negligence theory is viable, plaintiff cannot establish causation. Meijer asserts that plaintiff's testimony that even if there had been an instruction manual accompanying the tree stand, it is unlikely that he would have read it, is an admission fatal to his claim. However, we conclude that a question of fact exists with respect to whether Meijer's failure to include product materials and on-product warning labels with the sale of the product was a proximate cause of plaintiff's injuries. Admittedly, plaintiff testified that even if the tree stand had come with an owner's manual, he did not think he would have read it. However, he also testified that he was safety conscious, that he did purchase a safety harness, and that he had read the owner's manual that accompanied that product. Furthermore, when asked about on-product warning labels, plaintiff testified that if the warning label "were right in front of [him], [he] would have read it." Plaintiff further testified that if he had known that the tree stand could fail if it were left up for more than one year, he would not have left it in the tree, because he valued his life.

Additionally, Douglas Smith testified that as part of the manufacturing process in China, there would have been an orange sticker placed on the stand that included "the manufacturers name, the year the stand was manufactured, the manufacturer's address, and the model number, as well as a warning, safety warning." He further explained that the stickers "basically stuck to themselves" and were placed on the seat support frame or attached to the cables. Plaintiff

testified that at the time he purchased the stand, all he was sold was a stand with a price tag on it. Given this evidence, we conclude that there existed a question of fact regarding causation. Accordingly, the trial court did not err when it denied Meijer's motion for summary disposition brought pursuant to MCR 2.116(C)(10).

Meijer also argues that the trial court erred by denying summary disposition under MCR 2.116(C)(8). Meijer contends that plaintiff's complaint was factually insufficient in that it did not allege that Meijer was negligent for selling the tree stand without instructions or on-product warning labels. While Meijer is correct that the complaint does not include those specific allegations, the complaint does allege that "[a]t all relevant times, pursuant to MCL 600.2947(6), Defendant Meijer, Inc. owed a duty to exercise reasonable care, including breach of an implied warranty, with respect to the sale of the subject Hunter's View, Ltd. tree stand." It further alleges that "the subject tree stand had readily observable defects which would put a reasonable seller like Defendant Meijer, Inc. on notice that the product was not reasonable fit for its intended use as a hunting tree stand." To the extent that these allegations were factually insufficient, however, summary disposition was not the appropriate recourse. "If a party fails to plead facts with sufficient detail, the court should permit the filing of an amended complaint setting forth plaintiff's claims in more specific detail." *Dalley*, 287 Mich App at 305 (citation omitted). Indeed, MCR 2.116(I)(5), provides that "[i]f the grounds asserted are based on subrule (C)(8), (9), or (10), the court *shall* give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." (Emphasis added). Because we have concluded that the trial court did not err when it found viable a theory of liability related to Meijer's actions in selling the tree stand without the manufacturer's instructions or on-product warning labels, plaintiff should be granted leave to amend his pleadings to more specifically plead this theory.

## B. DOCKET NO. 328984

The Sinochem defendants argue that the trial court erred when it denied their motion for summary disposition based on lack of personal jurisdiction. We agree.

"Before a court may obligate a party to comply with its orders, the court must have in personam jurisdiction over the party." *Oberlies v Searchmont Resort, Inc*, 246 Mich App 424, 427; 633 NW2d 408 (2001). Jurisdiction over the person may properly be established by either demonstrating general personal jurisdiction under MCL 600.711, or limited personal jurisdiction pursuant to MCL 600.715. There is no contention that the Sinochem defendants are subject to general personal jurisdiction in Michigan under MCL 600.711. Instead, plaintiff argues that the trial court can properly exercise limited personal jurisdiction under MCL 600.715. We disagree.

In *Yoost*, 295 Mich App at 222-223, this Court articulated the two-prong analysis for determining whether a trial court has properly exercised limited personal jurisdiction over a defendant:

> When examining whether a Michigan court may exercise limited personal jurisdiction over a defendant, this Court employs a two-step analysis. First, this Court ascertains whether jurisdiction is authorized by Michigan's long-arm statute. Second, this Court determines if the exercise of jurisdiction is consistent

with the requirements of the Due Process Clause of the Fourteenth Amendment. Both prongs of this analysis must be satisfied for a Michigan court to properly exercise limited personal jurisdiction over a nonresident. Long-arm statutes establish the nature, character, and types of contacts that must exist for purposes of exercising personal jurisdiction. Due process, on the other hand, restricts permissible long-arm jurisdiction by defining the quality of contacts necessary to justify personal jurisdiction under the constitution. [Quotation marks and citations omitted.]

Thus, the two-step analysis begins with determining whether jurisdiction is authorized under Michigan's long-arm statute.

MCL 600.715 provides:

The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of any real or tangible personal property situated within the state.

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Plaintiff argues that subsections (1), (2), and (5) apply to the Sinochem defendants' contact with Michigan. We disagree.

Plaintiff argued at the hearing that the deposition testimony of David Smith and Douglas Smith established that the Sinochem defendants manufactured the subject tree stand. This is not an accurate interpretation of the deposition testimony. Douglas Smith testified that Hunter's View was in the business of selling tree stands in the United States. The tree stands were manufactured by Haijin Metal Products Company, Ltd., at its factory in Ningbo, China. Douglas Smith's contact at Haijin was Qian Jun, who was the factory manager. Douglas Smith then testified regarding his understanding of the relationship between Qian Jun and Haijin Metal Products:

*Q*. Was he employed by Haijin Metal Products? Are you aware?

*A.* I believe that he was employed by Sinochem, Sinochem Chemical Company, Sinochem Chemical Company. And Qian Jun was one of Sinochem's customers, if you will. So even though he was employed by Sinochem, he spent most of his time at the metal company.

Douglas Smith then explained that the assembly was done at Haijin Metal Products. After Haijin Metal Products manufactured the tree stand, it placed the tree stand in a box for shipping.

David Smith, the founder of Hunter's View, further clarified the relationship between the various entities. David had been doing business with China since 1990. Consequently, he had connections already established. Qian Jun was responsible for coordination of manufacturing in China. David Smith testified regarding Qian Jun's relationship with Sinochem and Ningbo:

> *Q.* And for whom does Mr. Jun work?
>
> *A.* He originally worked for a company called Sinochem, and then I promised him that if he was loyal to me and after we had developed this business that I would support him to leave that company where he worked for a number of years, and then he left and started his own business.
>
> And he would use a company called Ningbo Textiles to be the Chinese company that – but he was really independent, but he was the one that would find the different factories in China and – but he had his own company but, you know.
>
> *Q.* Was his own company Ningbo Textiles?
>
> *A.* No. That was the import/export company. At this time, China used big import/export companies because they had relationships with the banks, you know to get the financing. So he left Sinochem and then started using Ningbo Textiles where his brother worked.
>
> *Q.* Okay.
>
> *A.* Okay. *So he was not an employed [sic] by Ningbo Textiles or Sinochem,* but I would give orders to him, and he would give the orders to Ningbo Textiles. [Emphasis added.]

When asked about "Haijin Metal Products" in Ningbo, David Smith testified, "Maybe that was the factory that was manufacturing the tree stands." David then added:

> Ningbo Textiles and Sinochem, they were trading companies. They wouldn't do the manufacturing. They were just who you would use because they had the licenses to import and export out of China. Back then, the manufacturers wouldn't have the licenses to export. That was China's way of controlling the market. So the company just mentioned [Haijin Metal Products] was probably the manufacturer of tree stands, but they have to import and export through the trading company, which would be Ningbo Textiles.

According to David, Qian Jun "arranged everything," including the final assembly at the manufacturer in China. Regarding the relationship of the entities, David again reiterated: "Well Qian Jun was in Sinochem and then started using his brother to do Ningbo Textiles so . . . ."

Based on the foregoing testimony, and contrary to plaintiff's representations, the record does not support a finding that any Sinochem defendant manufactured the tree stand. It appears that Haijin Metal Products was the manufacturer. Similarly, the record does not support a finding that "Sinochem" was the importer/exporter of the tree stands. The exporter apparently was Ningbo Textiles. At best, the record supports the conclusion that Qian Jun was perhaps employed by "Sinochem Chemical Company," which is not a named defendant in this litigation. In any event, Jun left that company to pursue the tree stand venture with David Smith. This testimony, coupled with the affidavit of Lemin Yu,[4] does not support a finding that the Sinochem defendants transacted any business within this state, acted or caused any tortious act to be done, or consequences to occur in this state, nor is there any proof that the Sinochem defendants entered into a contract for services to be performed or for material to be furnished in the state. MCL 600.715(1), (2) and (5). Plaintiff bears the burden of demonstrating that the trial court possessed personal jurisdiction over defendants. *Oberlies*, 246 Mich App at 426. Simply put, plaintiff failed to meet that burden. Although we conclude that the Sinochem defendants' conduct did not fall within Michigan's long-arm statute, summary disposition would also be warranted where the exercise of personal jurisdiction over these defendants would not comport with principles of due process. Due process "restricts permissible long-arm jurisdiction by defining the quality of contacts necessary to justify personal jurisdiction under the constitution." *Yoost*, 295 Mich App at 222-223. In *Fraser v Almeda Univ*, 314 Mich App 79, 88; 886 NW2d 730 (2016), this Court recently reiterated the three-part test for determining whether a defendant has minimum contacts with the state of Michigan:

> First, the defendant must have purposefully availed himself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws. Second, the cause of action must arise from the defendant's activities in the state. Third, the defendant's activities must be substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable. [Quotation marks and citations omitted.]

The record demonstrates that none of the prongs of this three-part test are satisfied in this case. It has not been shown that the Sinochem defendants purposely established the minimum contacts with this state necessary to make the exercise of jurisdiction over them fair and reasonable. *Oberlies*, 246 Mich app at 433. Therefore under either a statutory or a due process analysis, the

---

[4] According to Yu's affidavit, the Sinochem defendants have never designed, manufactured, sold, or distributed tree stands at any time. Further, neither of the Sinochem defendants has ever done business of any nature with Hunter's View. Further, neither Sinochem defendant has ever sold or distributed any products in Michigan, nor do they maintain any offices or employees in Michigan. According to Yu, defendants do not advertise in Michigan. Essentially, Yu avers that the Sinochem defendants have no contact with the state of Michigan.

trial court erred when it denied the Sinochem defendants' motion for summary disposition under MCR 2.116(C)(1).

Because we have concluded that the trial court lacked limited personal jurisdiction over defendants Sinochem Group and Sinochem Corporation, it is unnecessary to address their alternative argument that plaintiff's claims against them are barred by the applicable statute of limitations.

In Docket No. 328855, we affirm the order denying Meijer's motion for summary disposition. In Docket No. 328984, we reverse the order denying the Sinochem defendants' motion for summary disposition and remand for entry of summary disposition in favor of Sinochem Group and Sinochem Corporation based on lack of personal jurisdiction. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro