*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEPARTMENT OF LICENSING AND
REGULATORY AFFAIRS, CORPORATIONS,
SECURITIES & COMMERCIAL LICENSING
BUREAU,

        Plaintiff-Appellee,

v

PROTECCION PLENITIUD INC., doing business as
ASSURE FOR LIFE,

        Defendant-Appellant.

UNPUBLISHED
January 17, 2025
3:07 PM

No. 366778
Oakland Circuit Court
LC No. 2022-197246-CZ

Before: RIORDAN P.J., and O'BRIEN and GARRETT, JJ.

PER CURIAM.

Defendant, Assure for Life (AFL), seeks review of the trial court's order granting summary disposition to plaintiff, Department of Licensing and Regulatory Affairs (LARA) under MCR 2.116(C)(10). The trial court ruled that AFL cannot solicit or sell its funeral assistance plans in Michigan without registering with LARA in accordance with the Prepaid Funeral and Cemetery Sales Act, MCL 328.211 *et seq.* (Prepaid Act). We find no error by the trial court and, therefore, we affirm.

## I. BACKGROUND

AFL is a Florida corporation engaged in the business of selling memberships in its "funeral assistance plans." In these plans, the member agrees to pay a monthly fee to AFL and, when the member dies, AFL pays the costs of funeral and/or cemetery services, merchandise associated with these services, and related travel costs. These services are provided by independent licensed providers. LARA brought suit against AFL for declaratory and injunctive relief and alleged that AFL's plans are prepaid contracts for funeral and cemetery services. For that reason, LARA maintained that AFL may not sell the plans without first complying with the Prepaid Act's registration requirements set forth in MCL 328.216.

-1-

LARA moved for summary disposition, arguing that there was no genuine issue of material fact that AFL must follow the registration requirements. AFL filed a combined response and countermotion for summary disposition under MCR 2.116(C)(1) and (10). AFL argued that the trial court did not have personal jurisdiction over AFL because AFL did not directly conduct business in Michigan, but acted only through third-party independent contractors. AFL also argued that it was not subject to the Prepaid Act because it was not a provider of funeral and cemetery services.

The trial court declined to address AFL's argument regarding personal jurisdiction because AFL did not seek relief under MCR 2.116(I)(2). As noted, the court concluded that the Prepaid Act applied to AFL's services, and it enjoined AFL from selling funeral assistance plans in Michigan until it complied with the registration requirements. This appeal followed.

## II. PERSONAL JURISDICTION

AFL argues that the trial court erred by refusing to consider its personal jurisdiction argument. We disagree.

We review de novo issues concerning the application and interpretation of court rules. *Safdar v Aziz*, 501 Mich 213, 217; 912 NW2d 511 (2018). When it ruled on this issue, the trial court stated:

> AFL's countermotion is not properly before the Court. AFL did not make its countermotion under MCR 2.116(I)(2). AFL has not given proper notice because its Motion was filed on May 17, 2023. See MCR 2.116(G)(1)(a)(*i*). AFL's countermotion is currently noticed and praeciped for June 14, 2023; therefore, the Court will not consider AFL's countermotion in rendering its opinion.

MCR 2.116 states, in pertinent part:

> (G) Affidavits; Hearing.
>
> (1) Except as otherwise provided in this subrule, MCR 2.119 applies to motions brought under this rule.
>
> (a) Unless a different period is set by the court,
>
> (*i*) a written motion under this rule with supporting brief and any affidavits must be filed and served at least 21 days before the time set for the hearing, and
>
> (*ii*) any response to the motion (including brief and any affidavits) must be filed and served at least 7 days before the hearing.
>
> (*iii*) the moving party or parties may file a reply brief in support of the motion. Reply briefs must be confined to rebuttal of the arguments in the nonmoving party or parties' response brief and must be limited to 5 pages. The reply brief must be filed and served at least 4 days before the hearing.

-2-

(*iv*) no additional or supplemental briefs may be filed without leave of the court.

AFL filed its combined response to LARA's motion and its own countermotion 13 days before LARA's motion was noticed for hearing on May 31, 2023. AFL argues that the trial court should not have treated its countermotion as an original summary disposition motion subject to the time constraints of MCR 2.116(G)(1)(a). According to AFL, it sought relief under MCR 2.116(I)(2), which does not require filing at least 21 days before the hearing. MCR 2.116(I)(2) states: "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party."

"Courts should generally give the word 'shall' a mandatory meaning and the word 'may' a permissive meaning, unless to do so would clearly frustrate legislative intent as evidenced by other statutory language or by reading the statute as a whole." *Comm to Ban Fracking in Michigan v Bd of State Canvassers*, 335 Mich App 384, 396; 966 NW2d 742 (2021) (quotation marks and citation omitted). "The use of the word 'may' in the court rule indicates permissive, discretionary activity." *In re SB*, ___ Mich App ___, ___; ___ NW2d ___ (2024) (Docket No. 367014); slip op at 21 (quotation marks and citation omitted). The word "may" in MCR 2.116(I)(2) therefore indicates that the trial court has discretion to consider granting summary disposition for the nonmoving party. A court abuses its discretion when it chooses an outcome that is outside of the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

AFL's argument concerning personal jurisdiction was not merely a defense or response to LARA's motion for summary disposition under MCR 2.116(C)(10). Instead, AFL asserted a basis for granting judgment in AFL's favor that was distinct from LARA's argument that there was no genuine issue of material fact. AFL acknowledged this by including the phrase "Counter Motion for Summary Disposition" in the title of its brief. Additionally, nothing prevented AFL from filing a separate motion for summary disposition on grounds of personal jurisdiction within the strictures of MCR 2.116(G). Under these circumstances, the trial court did not abuse its discretion when it declined to consider AFL's argument.

Moreover, AFL's argument about personal jurisdiction lacks merit. We review de novo as a question of law whether a court possesses personal jurisdiction over a party. *Yoost v Caspari*, 295 Mich App 209, 219; 813 NW2d 783 (2012). Questions regarding a nonresident's subjection to personal jurisdiction address whether the exercise of jurisdiction "is consistent with the notions of fair play and substantial justice required by the Due Process Clause of the Fourteenth Amendment," which we also review de novo. *Id*. Moreover, we review de novo issues of statutory and constitutional interpretation and application. *Warren v Flint*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 366226); slip op at 3.

Our Supreme Court recently summarized the principles of statutory interpretation as follows:

The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language. The first step in that determination is to review the language of the statute itself. Unless statutorily

defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. We may consult dictionary definitions to give words their common and ordinary meaning. When given their common and ordinary meaning, the words of a statute provide the most reliable evidence of its intent. [*Schafer v Kent Co*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket Nos. 164975 and 165219); slip op at 12 (quotation marks and citation omitted).]

"In reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory." *Holliday v Secretary of State*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket Nos. 372241, 372255, and 372256); slip op at 7 (quotation marks and citation omitted).

In its brief on appeal, AFL relied on the Business Corporations Act, MCL 450.1101 *et seq*., but at oral argument it conceded that its better argument lies with Michigan's long-arm statutes. MCL 600.715 is Michigan's long-arm jurisdictional statute for specific jurisdiction over a foreign corporation, and it provides:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
>
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
>
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
>
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

AFL transacted business within the state by contracting with state residents to join its funeral assistance plan. Although AFL emphasizes that, ultimately, AFL's role is limited to helping beneficiaries make arrangements with third-party independent contractors, AFL cannot reasonably assert that enrollment of state residents in its plans falls outside of the "transaction of any business within the state." MCL 600.715(1). The trial court therefore properly established personal jurisdiction over AFL.

AFL contends that this Court should apply *Long Mfg Co v Wright-Way Farm Serv*, 391 Mich 82; 214 NW2d 816 (1974), in which our Supreme Court held that an out-of-state corporation

that made an incidental sale to a party in Michigan was not required to obtain certification as a foreign corporation doing business in Michigan. In *Long*, the plaintiff, a North Carolina corporation, brought suit against the defendant, a Michigan party, to recover the purchase price of goods sold to the defendant. *Id*. at 84. The defendant argued that the plaintiff was not entitled to bring suit against the defendant in a Michigan court because the plaintiff failed to obtain "a certificate authorizing it as a foreign corporation to 'carry on its business' in Michigan." *Id*. at 85. Our Supreme Court held that the plaintiff's sale in Michigan did not constitute "doing business" in Michigan because it was merely an incidental part of the plaintiff's sales in interstate commerce. *Id*. at 85, 88-90. The Court held that "[t]he expansive interpretation of the long-arm jurisdiction statutes is not a proper guide for determining what intrastate activities constitute 'carry(ing) on its business' by a foreign corporation requiring procurement of a certificate of authority." *Id*. at 86.

AFL's reliance on *Long* is misplaced. The issue in *Long* was whether an out-of-state corporation could invoke the jurisdiction of a Michigan court to seek relief against a Michigan resident. The defendant attempted to apply the principles of personal jurisdiction under the long-arm statute not to shield itself from jurisdiction, but instead to argue that the plaintiff should have obtained a domestication certificate, and that its failure to do so precluded the plaintiff from seeking relief against the defendant in Michigan. The circumstances in *Long* bear no relation to a state exercising its regulatory authority against a foreign corporation and it is not relevant to this case.

As discussed, the trial court did not err by declining to address AFL's claim regarding personal jurisdiction, and AFL's argument about jurisdiction is unavailing. Accordingly, AFL is not entitled to relief on this issue.

III. PREPAID ACT

AFL argues that LARA failed to establish that there was no genuine issue of material fact concerning AFL's business activities under the Prepaid Act. Again, we disagree.

We review a trial court's decision on a motion for summary disposition de novo. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Summary disposition under MCR 2.116(C)(10) is proper "when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). The reviewing Court must "review the pleadings, affidavits, and other documentary evidence submitted, make all reasonable inferences therefrom, and determine whether a genuine issue of material fact exists, giving the nonmoving party the benefit of reasonable doubt." *Wheeler v Shelby Charter Twp*, 265 Mich App 657, 663; 697 NW2d 180 (2005).

The Prepaid Act, MCL 328.213 to 215, states definitions pertinent to this appeal. MCL 328.213 provides:

> (f) "Cemetery merchandise" means merchandise described in section 4(1)(k)(i).

(g) "Cemetery services" means cremations, grave openings and closings, and installation of grave memorials.

\* \* \*

(k) "Contract beneficiary" means an individual specified or implied in a prepaid contract for whom the funeral or cemetery services or merchandise shall be performed or furnished after death.

(*l*) "Contract buyer" means an individual, including a contract beneficiary, who purchases merchandise or funeral or cemetery services pursuant to a prepaid contract.

(m) "Contract seller" means a person who sells, makes available, or provides prepaid contracts. [MCL 328.213.]

MCL 328.214 provides:

(e) "Funeral services" means services customarily performed by a mortuary science licensee who is licensed pursuant to article 18 of the occupational code, 1980 PA 299, MCL 339.1801 to 339.1812. Funeral services include, but are not limited to, care of dead human remains, embalming, preparation of dead human remains for final disposition, professional services relating to a funeral or an alternative to a funeral or final disposition of dead human remains, transportation of dead human remains, limousine services, use of facilities or equipment for viewing dead human remains, visitation, memorial services, or services which are used in connection with a funeral or alternative to a funeral, coordinating or conducting funeral rites or ceremonies, cremations, and other services provided in connection with a funeral, alternative to a funeral, or final disposition of dead human remains.

(f) "Grave memorial" means a stone or other structure or item used for the purpose of memorializing a decedent and placed on or in proximity to a place of burial, interment, or entombment of a casket, catafalque, or vault or on or in proximity to a place of inurnment.

(g) "Guaranteed price contract" means a prepaid contract under which funds received are held pursuant to an escrow agreement. A guaranteed price contract has a guaranteed fixed price for which specified merchandise or funeral or cemetery services are required to be sold to or made available for a contract buyer or for a contract beneficiary, regardless of the cost or value of the merchandise or funeral or cemetery services at the time of death of the contract beneficiary. Under the guaranteed price contract, additional consideration is not charged for the originally

contracted for merchandise or funeral or cemetery services at the time of delivery of the merchandise or funeral and cemetery services.

* * *

(k) Subject to subsection (2), "merchandise" means both of the following:

(*i*) Cemetery burial vaults or other outside containers, grave memorials, and urns.

(*ii*) Items of merchandise sold or offered for sale or lease to consumers that will be used in connection with a funeral or an alternative to a funeral or the final disposition of human remains, including, but not limited to, caskets, combination units, and catafalques.

MCL 328.215 provides:

(a) "Nonguaranteed price contract" means a prepaid contract under which funds received are held pursuant to an escrow agreement between a contract seller or provider and a contract buyer and are applied to the cost of the merchandise or funeral or cemetery services, which merchandise or funeral or cemetery services may be selected by the contract buyer at the time the contract is signed or as selected by a person legally authorized to procure merchandise or funeral or cemetery services at the time of death of the contract beneficiary. A nonguaranteed price contract does not obligate the contract beneficiary's estate or the person who is legally entitled to make funeral or cemetery arrangements for a deceased contract beneficiary to purchase specific merchandise or funeral or cemetery services which were selected before the contract beneficiary's death and does not obligate either the contract beneficiary's estate or the person who is entitled to make funeral or cemetery arrangements for a deceased contract beneficiary to expend a specific amount on merchandise or funeral or cemetery services.

* * *

(d) "Prepaid contract" means a contract requiring payment in advance for funeral or cemetery services or merchandise, physical delivery and retention of which would occur after death under a guaranteed price contract or a nonguaranteed price contract. Prepaid contracts do not include a contract for the sale of merchandise or funeral or cemetery services entered into after the death of the contract beneficiary.

* * *

(f) "Provider" means any person who furnishes or agrees to furnish merchandise or funeral or cemetery services pursuant to a prepaid contract, whether or not that person is the contract seller. In the case of merchandise, provider means the person who arranges for delivery of the merchandise at the time of the death of the contract beneficiary and not the manufacturer of the merchandise. In the case

of funeral services, provider means a person who possesses all licenses necessary to perform the funeral services specified in the prepaid contract. In the case of cemetery services, provider means a person who possesses all licenses and registrations necessary to provide the cemetery services specified in the prepaid contract.

>  (g) "Registrant" means a person who has registered with the department pursuant to section 6.

Section 6 of the Prepaid Act, MCL 328.216(1), imposes a registration requirement on persons engaged in the sale of prepaid funeral and cemetery services, as follows:

>  A person shall not sell, provide, or agree to provide merchandise or funeral or cemetery services pursuant to a prepaid contract unless that person is registered with the department as provided in this section and has received a certificate of registration.

MCL 328.216(2) provides the procedure for obtaining the certificate.

MCL 328.216(1) prohibits the actions of selling, providing, and agreeing to provide, merchandise, funeral services, and cemetery services. The prohibited activities are modified by the phrase "pursuant to a prepaid contract." AFL argues that it does not engage in selling, providing, or agreeing to provide merchandise, funeral cemetery services, or funeral services because it merely sells assistance in procuring these products at a future date. AFL emphasizes that it is not a mortuary science licensee qualified to prepare deceased persons' remains for funeral services, nor is it authorized to perform grave openings and closings. It argues that it therefore does not provide funeral services or cemetery services as these terms are defined in MCL 328.213(g) and MCL 328.214(e). However, MCL 213.216(1) applies to "a person," not only to providers of funeral services and cemetery services.

The statutory definition of "prepaid contract" states the following criteria: (1) a requirement of payment in advance; (2) for funeral or cemetery services or merchandise; (3) in which physical delivery and retention of merchandise and services will occur after death. MCL 328.215(d). A "contract seller" is a person "who sells, makes available, or provides prepaid contracts." Applying this to AFL, members pay AFL a monthly installment and, when the member dies, AFL assists the member's family with funeral arrangements. Importantly, that assistance includes paying the third-party providers for funeral services, cemetery services, and related merchandise. The plan that AFL sells to members is therefore a prepaid contract because the contract requires payment in advance for funeral or cemetery services and merchandise that will be furnished after the member's death. AFL is thus an entity that "sells, makes available, or provides prepaid contracts."

AFL does not deny that the purpose of its memberships is for the beneficiary to receive funeral or cemetery services, or related merchandise, in exchange for monthly fees. But AFL argues that, because the actual goods and services will be provided by an independent third party, it is not engaging in the statutory actions. Nonetheless, AFL provides services pursuant to a prepaid contract by contacting the independent provider and transferring payment. MCL

328.216(1). AFL also argues that it does not sell anything pursuant to a prepaid contract because nothing is sold until after the member's death. AFL emphasizes that the statutory definition of "prepaid contract" specifically excludes "a contract for the sale of merchandise or funeral or cemetery services entered into after the death of the contract beneficiary." MCL 328.215(d). AFL maintains that, in its program, the member's family chooses the providers and chooses the goods and services after the member dies; therefore its services fall outside the definition of "prepaid contract" and outside the regulatory scope of the Prepaid Act.

We are not persuaded by AFL's argument. AFL's contract provides for specific levels of services and goods, such as a "standard funeral service or cremation." The member thus pays for a category or range of goods and services that the family will select after the member's death, with no payment due to the third-party provider because AFL will pay the provider in accordance with the contract. AFL's argument that its plan merely entitles the member's family to contact AFL for assistance is unconvincing because the clear benefit of the plan is that the family will not have to pay out-of-pocket for funeral and cemetery services.

AFL argues that, under the Prepaid Act, a prepaid contract must be either a guaranteed price contract or a nonguaranteed price contract. The definition states that a prepaid contract requires "payment in advance for funeral cemetery services or merchandise, physical delivery and retention of which would occur after death under a guaranteed price contract or a nonguaranteed price contract." MCL 328.215(d). This sentence does not restrict prepaid contracts to the guaranteed price or nonguaranteed price categories, but instead includes both of these categories, without excluding other contract models that contract sellers might devise.

Further, AFL's contract model qualifies as a guaranteed price contract. A guaranteed price contract is a contract (1) in which funds received are held pursuant to an escrow agreement; (2) has a guaranteed fixed price for specific merchandise and services; and (3) the price is fixed regardless of the cost or value of the services and goods at the time of the beneficiary's death. MCL 328.214(g). In contrast, a nonguaranteed price contract is a contract in which (1) the funds received are held pursuant to an escrow agreement; and (2) the monies collected are applied to the cost of the merchandise at the time of death. MCL 328.215(a). In AFL's plan, the price of goods and services is fixed and tied to the amount of payments the beneficiary made from the time the contract was executed to the time of the beneficiary's death. There is no indication in the record that the family will have to pay extra costs if the total amount paid is less than the value of the goods and services at the time they are furnished, or that the family will receive a refund if the member paid in excess of the value. The specific amount to be paid is indeterminate at the time the contract is executed, but it does not fluctuate according to market conditions. We therefore conclude that the trial court correctly ruled that AFL's business is subject to the Prepaid Act registration requirements.

## IV. INJUNCTION

AFL argues that the trial court's order of injunction is defective under MCR 3.310(C). This rule provides:

> Form and Scope of Injunction. An order granting an injunction or restraining order

(1) must set forth the reasons for its issuance;

(2) must be specific in terms;

(3) must describe in reasonable detail, and not by reference to the complaint or other document, the acts restrained; and

(4) is binding only on the parties to the action, their officers, agents, servants, employees, and attorneys, and on those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

MCL 328.234 provides:

The department or any other person, in order to force compliance with this act, may bring an action in a circuit court in any county in which the registrant or any other person has solicited or sold prepaid contracts, whether or not that person has purchased a prepaid contract or is personally aggrieved by a violation of this act. The court may award damages, issue equitable orders in accordance with the Michigan court rules to restrain conduct in violation of this act, and award reasonable attorney fees and costs to a prevailing party.

The trial court's order states:

The purpose of the Prepaid Act is to protect consumers from unscrupulous business practices. LARA is not seeking money damages because money damages are an inadequate remedy. LARA argues the inconvenience to AFL in having to register and comply with the Prepaid Act before it continues selling its monthly membership contracts is minor compared to the hardship to LARA if it is denied.

The Court agrees with LARA. In this instance, AFL's business clearly falls within the purview of the Prepaid Act, and it is not permitted to continue to sell monthly membership contracts without first registering and complying with the Prepaid Act. Therefore, pursuant to MCL § 328.234 and MCR 3.310, the Court hereby enjoins AFL, its agents, independent contractors, and employees from soliciting or selling "funeral assistance plans" or prepaid contracts for funeral or cemetery services or merchandise in the State of Michigan without being in full compliance with the Prepaid Act.

AFL argues that the trial court's order of injunction was invalid because the court did not make findings that LARA was at risk of sustaining irreparable harm. MCR 3.310(B)(2)(b) requires a "temporary restraining order granted without notice" to "describe the injury and state why it is irreparable," but this requirement is not included in MCR 3.310(C), the subrule generally governing orders of injunction.

AFL asserts that the order of injunction is deficient because, contrary to MCR 3.310(C)(1), it does not "set forth the reasons for its issuance" other than to refer to the Prepaid Act in its entirety. It also contends that the general reference to the Prepaid Act violates the requirement

that the order "must describe in reasonable detail, and not by reference to the complaint or other document, the acts restrained . . . ." MCR 3.310(C)(3). But the order clearly states that relief is granted to LARA because AFL has violated MCL 328.216(1), which requires sellers of contracts for prepaid funeral and cemetery services to obtain a certificate of registration. The order also references MCL 328.234 as statutory authorization to impose the injunction. AFL's argument that the order fails to specifically describe what conduct is enjoined is similarly without merit, because the order clearly requires AFL to cease soliciting or selling its plans in Michigan unless and until it registers in compliance with the Prepaid Act.

## V. DISCOVERY

AFL also asserts that the trial court erroneously granted summary disposition before the parties completed discovery.

"Generally, summary disposition under MCR 2.116(C)(10) is premature if it is granted before discovery on a disputed issue is complete." *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009). "However, the mere fact that the discovery period remains open does not automatically mean that the trial court's decision to grant summary disposition was untimely or otherwise inappropriate." *Id.* "[T]he nonmovant must identify the disputed issues and support that further discovery stands a fair chance of uncovering additional factual support through independent evidence." *Glorycrest Carpenter Rd, Inc v Adams Outdoor Advertising Ltd Partnership*, ___ Mich App ___,___; ___ NW3d ___ (2024) (Docket No. 366261); slip op at 11. "The party opposing summary disposition must offer the required MCR 2.116(H) affidavits, with the probable testimony to support its contentions." *Id.* at ___; slip op at 11 (quotation marks and citation omitted). "Mere speculation that additional discovery may uncover supporting evidence is not enough." *Id.* at ___; slip op at 11. MCR 2.116(H)(1) provides that "[a] party may show by affidavit that the facts necessary to support the party's position cannot be presented because the facts are known only to persons whose affidavits the party cannot procure." "The affidavit must (a) name these persons and state why their testimony cannot be procured, and (b) state the nature of the probable testimony of these persons and the reason for the party's belief that these persons would testify to those facts." MCR 2.116(H)(1).

AFL's response to LARA's motion failed to identify disputed issues that could be developed after the parties conducted more discovery. Instead, AFL took the position that LARA misunderstood the nature of AFL's services. It further suggested that if LARA had conducted discovery to understand how the contracts worked, instead of relying on AFL's advertisements, LARA would have realized that AFL did not perform services regulated by the Prepaid Act. But AFL did not provide an affidavit as required by MCR 2.116(H) and, therefore, there was no factual basis for this argument. Also, AFL's argument that summary disposition was premature fails to acknowledge that AFL was in the best position to produce evidence of its own business practices and services. This also applies to AFL's argument on appeal that discovery from LARA and a funeral directors' association might provide support for AFL's position that AFL was unable to provide.

The central issue in LARA's action was whether AFL's funeral assistance plans meet the criteria for prepaid contracts under the Prepaid Act. The plans meet the criteria because the

member pays monthly fees to AFL in exchange for AFL's future payments for funeral and cemetery services. As discussed, this conclusion is not altered by AFL's practices of collecting monthly membership payments, using third-party independent providers, paying the providers after the member's death, and describing levels of goods and services instead of specific products. Moreover, any evidence AFL provides from third parties or from LARA cannot alter the analysis. Unless AFL misrepresented its operations to LARA and prospective customers, there is no likelihood that continued discovery could produce evidence that would establish a genuine issue of material fact.

Affirmed.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Kristina Robinson Garrett